# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cv-294 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| DENNIS QUEBE, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

# DECISION AND ENTRY

## I.  <u>INTRODUCTION</u>

"The research tax credit is one of the most complicated provisions in the Code." *Suder v. Comm'r,* T.C. Memo 2014-201, 108 T.C.M. (CCH) 354, 2014 WL 4920724, at *77 (T.C. 2014).  Believing that Dennis Quebe and Linda Quebe (Defendants) are not entitled to the research and development tax credit, the United States of America (Plaintiff) brings this action pursuant to 26 U.S.C. § 7405(b) to recover allegedly erroneous refunds of federal taxes made to Defendants.

This case is before the Court upon five motions and related memoranda: Defendants' Motion to Compel Responses to Requests for Production (Doc. #s 32, 33, 36, 37, 38); Defendants' Motion to Compel Responses to Interrogatories and Identification of Lay Witness (Doc. #s 39, 40, 45, 46); Plaintiff's Renewed Motion to Compel Responses to Interrogatories (Doc. #s 42, 43, 50, 53); Defendants' Motion to

Quash the Depositions of Kenneth Lowery and Lance Beck and Motion for Protection (Doc. #s 47, 48); and Plaintiff's Motion to Quash the Depositions of IRS Employees or, in the alternative, for a Protective Order (Doc. #s 49, 54); and the record as a whole.

## II.    <u>BACKGROUND</u>

In 2009 and 2010, Dennis Quebe was the sole shareholder of Quebe Holdings, Inc. (QUI), a corporation composed of three companies, Chapel Electric Co., LLC, Chapel Romanoff Technologies, LLC, and Romanoff Electric Co., LLC.  On September 14, 2010 and September 14, 2011, QUI filed a Form 1120S with the Internal Revenue Service (IRS) for the 2009 and 2010 tax years, respectively.  On April 15, 2010 and April 15, 2011, Defendants filed a Form 1040 with the IRS for the 2009 and 2010 tax years, respectively.  Income flowing through QHI was reported on Defendants' returns from both years.

In 2012, QUI retained alliantgroup, LP, (alliantgroup) to evaluate QUI's entitlement to research and development (R&D) tax credits and 179D deductions for tax years 2009 through 2011.  [A]lliantgroup issued a report identifying approximately $268,686.00 of estimated net R&D tax credits.  On April 1, 2013, QUI filed an amended Form 1120S with the IRS for the 2009 tax year.  QUI claimed credits for increasing research activities under 26 U.S.C. § 41 and deductions under 26 U.S.C. § 179D.  On the same day, the IRS received a Form 1040X from Defendants that reflected a reduction in their income tax liability in the amount of $107,292.00.  On August 26, 2013, the IRS issued a refund in the amount of $119,954.90.

On December 16, 2013, QUI filed an amended Form 1120S for the 2010 tax year. Again, QUI claimed credits for increasing research activities under 26 U.S.C. § 41 and deductions under 26 U.S.C. § 179D.  On December 30, 2013, the IRS received a Form 1040X from Defendants that reflected a reduction in their income tax liability in the amount of $118,048.00.  On April 7, 2014, the IRS issued a refund in the amount of $129,482.90.

QUI and Defendants also filed amended tax returns for tax years 2008, 2011, and 2012, and the IRS issued refunds for those years as well.  The IRS subsequently reviewed Defendants' income tax returns for 2008, 2011, and 2012 and QUI's corporate income tax returns for 2011 and 2012.  The IRS concluded that Defendants were not entitled to the R&D tax credits and deductions.  Plaintiff then filed this case on August 25, 2015, alleging that QUI is not entitled to credits under 26 U.S.C. § 41 or deductions under 26 U.S.C. § 179D for the 2009 and 2010 tax years.  Plaintiff seeks to recover from Defendants $119,954.65 plus interest for 2009 and $129,482.90 plus interest for 2010. Defendants deny that the refunds were erroneous and request the case be dismissed with prejudice.

## III.  <u>STANDARD OF REVIEW</u>

Under the Federal Rules of Civil Procedure, the scope of discovery is "traditionally quite broad."  *Lewis v. ACB Bus. Servs, Inc.,* 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir.1970)).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

> importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  But, "this desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."  *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991).

A party may file a motion to compel discovery when the opposing party fails to provide proper responses to requests for production under Rule 34, fails to answer an interrogatory submitted under Rule 33, or fails to make a disclosure required by Rule 26(a).  Fed. R. Civ. P. 37(a)(3).  "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."  *Mayer v. Allstate Vehicle & Prop. Ins. Co.,* No. 2:15-cv-2896, 2016 WL 1632415, at *2 (S.D. Ohio Apr. 22, 2016) (Deavers, M.J.), *objections overruled,* No. 2:15-cv-2896, 2016 WL 2726658 (S.D. Ohio May 10, 2016) (Marbley, D.J.) (quoting *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, M.J.); *Clumm v. Manes*, No. 2:08-cv-567 (S.D. Ohio May 27, 2010) (King, M.J.)); *see also United States ex rel. Shamesh v. CA, Inc.,* 314 F.R.D. 1, 8 (D.D.C. 2016) ("In cases where a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is within the scope of discoverable information under Rule 26.").  If the proponent meets its initial burden, then

4

"the party resisting production has the burden of establishing that the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Pillar Title Agency v. Pei,* No. 2:14-cv-525, 2015 WL 2238180, at *3 (S.D. Ohio May 12, 2015) (Kemp, M.J.) (citing *Vickers v. Gen. Motors Corp.,* No. 07-2172 M1/P, 2008 WL 4600997, at *2 (W.D. Tenn. Sept. 29, 2008)).

IV.     **THE RESEARCH TAX CREDIT & BURDEN OF PROOF**

Before delving into the pending motions, exploration of the research tax credit and related burden will provide context.  Under 26 U.S.C. § 41, taxpayers can claim credit for increasing research activities if they incur "qualified research expenses" (QREs).  QREs are the sum of in-house research expenses—including wages paid to an employee for conducting or directly supervising qualified research—and contract research expenses. 26 U.S.C. § 41(b)(1), (2).  To determine whether research is "qualified," four tests are applied to each business component."  *Suder,* 2014 WL 4920724, at *14.

> First, expenditures connected with the research must be eligible for treatment as expenses under section 174 (the section 174 test).  Second, the research must be undertaken for the purpose of discovering technological information (the technological information test).  Third, the taxpayer must intend that the information to be discovered be useful in the development of a new or improved business component of the taxpayer (the business component test).  Fourth, substantially all of the research activities must constitute elements of a process of experimentation for a purpose relating to a new or improved function, performance, reliability, or quality (the process of experimentation test).

*Id.* (footnote and internal citations to 26 U.S.C. § 41 omitted). A "business component" is "any product, process, computer software, technique, formula, or invention which is to be-- (i) held for sale, lease, or license, or (ii) used by the taxpayer in a trade or business of the taxpayer." 26 U.S.C § 41(d)(2)(B).

Under the section 174 test, expenditures connected with the research are eligible for treatment as expenses if the expenditures are "incurred in connection with the taxpayer's trade or business which represent research and development costs in the experimental or laboratory sense." Treas. Reg. § 1.174-2; *see* 26 U.S.C. § 174.

> Expenditures represent research and development costs in the experimental or laboratory sense if they are for activities intended to discover information that would eliminate uncertainty concerning the development or improvement of a product. Uncertainty exists if the information available to the taxpayer does not establish the capability or method for developing or improving the product or the appropriate design of the product.

Treas. Reg. § 1.174-2(a)(1).

The technological information test requires that the research be undertaken for the purpose of discovering technological information. Research is undertaken for that purpose "if it is intended to eliminate uncertainty concerning the development or improvement of a business component." Treas. Reg. § 1.41-4(a)(3)(i). "[I]nformation is technological in nature if the process of experimentation used to discover such information fundamentally relies on principles of the physical or biological sciences, engineering, or computer science." *Id.* at (a)(4).

Under the business component test, the taxpayer must "intend that the information to be discovered be useful in the development of a new or improved business component of the taxpayer." *Suder,* 2014 WL 4920724, at *17 (citing 26 U.S.C. § 41(d)(1)(B)(ii)).

Finally, under the process of experimentation test, substantially all of the research activities must constitute elements of a process of experimentation for the purpose of relating to a new or improved function, performance, or reliability or quality. 26 U.S.C. § 41(d)(1)(C), (3)(A). "A process of experimentation is a process designed to evaluate one or more alternatives to achieve a result where the capability or the method of achieving that result, or the appropriate design of that result, is uncertain as of the beginning of the taxpayer's research activities." Treas. Reg. § 1.41-4(a)(5).

As Plaintiff, the United States "bears the ultimate burden of proof to show not only that some amount has been erroneously refunded but also how much that amount is." *United States v. McFerrin,* 570 F.3d 672, 675 (5th Cir. 2009); *see United States. v. MacPhail,* 149 F. App'x 449, 453 (6th Cir. 2005) ("To obtain repayment for an allegedly erroneous refund under 26 U.S.C. § 7405(b), the Government must show that the money was erroneously paid and that the Government brought suit within the two-year statute of limitations."). However, "Tax credits are a matter of legislative grace, and taxpayers bear the burden of proving they are entitled to claim tax credits." *Suder,* 2014 WL 4920724, at *12 (citations omitted); *see Shami v. Comm'r,* 741 F.3d 560, 567 (5th Cir. 2014) ("When claiming a tax credit, taxpayers are required to retain records necessary to substantiate the credit.") (citations and internal quotation marks omitted); 26 U.S.C. § 6001; Treas. Reg. § 1.6001-1(a), (e). Specifically, "A taxpayer claiming a credit under

section 41 must retain records in sufficiently usable form and detail to substantiate that

the expenditures claimed are eligible for the credit." Treas. Reg. § 1.41-4(d).

## V. <u>DISCUSSION</u>

### A. <u>Defendants' Motion to Compel Responses to Requests for Production</u>

#### 1. Defendants' Second Set of Requests for Production of Documents

Defendants' Second Set of Requests for Production includes sixty-five requests

concerning six IRS employees.  For each employee, Defendants request the same

documents:

> Please provide the full and complete copy of [the employee's]
> notes and files pertaining to the Taxpayers Dennis and Linda
> Quebe or Quebe Holdings, Inc. for tax years 2009-2010.
> (Doc. #32-2, Request #s 104, 114, 124, 134, 144, 155).

> Please provide the personnel file for [the employee],
> including but not limited to previous work history,
> educational experience, training received from the Internal
> Revenue Service, performance evaluations, promotions
> received from the Internal Revenue Service.  The intent for
> the request is not to harass or request privileged health
> information.  Please redact any and all health related material
> from the file.  (Doc. #32-2, Request #s 105, 115, 125, 135,
> 145, 156).

> Please provide the time entries and work logs prepared by
> [the employee] pertaining to the Taxpayers Dennis and Linda
> Quebe or Quebe Holdings, Inc. for tax years 2009-2010.
> (Doc. #32-2, Request #s 106, 116, 126, 136, 146, 157).

> Please provide documents reflecting the expenditures
> incurred by [the employee] pertaining to the Taxpayers
> Dennis and Linda Quebe or Quebe Holdings, Inc. for tax
> years 2009-2010.  (Doc. #32-2, Request #s 107, 117, 127,
> 137, 147, 158).

Please provide reports generated by [the employee] pertaining to Taxpayers Dennis and Linda Quebe or Quebe Holdings, Inc. for tax years 2009-2010.  (Doc. #32-2, Request #s 108, 118, 128, 138, 148, 159).

Please provide documents generated by [the employee] pertaining to Taxpayers Dennis and Linda Quebe or Quebe Holdings, Inc. for tax years 2009-20l0, including but not limited to correspondence, emails, faxes, text messages, reports, memorandum, and meeting minutes.  (Doc. #32-2, Request #s 109, 119, 129, 139, 149, 160).

Please provide documents reviewed by [the employee] in preparing his opinions pertaining to the Taxpayers Dennis and Linda Quebe, for tax years 2009-2010.  (Doc. #32-2, Request #s 110, 120, 130, 140, 150, 161).

Please provide documents reflecting the job description and job duties of [the employee] for the time period of June 1, 2015 to June 30, 2015.  (Doc. #32-2, Request #s 111, 121, 131, 141, 151, 162).

Please provide any and all meeting notes produced wherein [the employee] was present and the Taxpayers Dennis and Linda Quebe or Quebe Holdings, Inc. claim for the tax credit for increasing research activities or 179D Tax Deduction for tax years 2009-2010 was discussed.  (Doc. #32-2, Request #s 112, 122, 132, 142, 152, 163).

Please provide any and documentation [the employee] specifically reviewed pertaining to Taxpayers Dennis and Linda Quebe or Quebe Holdings, Inc. for tax years 2009-2010.  (Doc. #32-2, Request #s 113, 123, 133, 143, 153, 164).

Defendants also request all the statistical models generated or reviewed and all email correspondence between Sharon Jenkins and four IRS employees: Joseph Roussos, Kurt R. Kuxhausen, Jeanette Czachur, and Wayde Smith.  (Doc. #33-2, Request #s 154, 165-68).

## 2.      Plaintiff's Responses and Objections

Plaintiff objected to every request in Defendants' Second Request for Production

and has not produced any documents.  First, Plaintiff objected to each request,

> [O]n the ground that it seeks documents beyond the scope of
> discovery provided for in Fed. R. Civ. P. 26(b)(1) in that it
> seeks documents unrelated to any claim or defense of either
> party in this litigation.  As such, this request appears to have
> been made for the improper purpose of harassing the United
> States and its employees, as well as causing unnecessary
> delay, and needlessly increasing the cost of litigation.

(Doc. #33-7, *PageID* #s 477-519) (citing Fed. R. Civ. P. 26(g)).  This was Plaintiff's only

objection to the requests for the employees' personnel files; time entries and work logs;

documents reflecting expenditures; and documents reflecting job descriptions and job

duties.  (Doc. #33-7, Requests #s 105-07, 111, 115-17, 121, 125-27, 131, 135-37, 141,

145-47, 151, 156-58, 162).

However, Plaintiff objected on several other grounds to the requests for the

employees' notes; reports and documents generated by the employees; documents

reviewed by the employees in preparing their opinions; meeting notes produced where

the employees were present; documentation the employees specifically reviewed; and

correspondence between employees.  (Doc. #33-7, Request #s 104, 108-10, 112-14, 118-

20, 122-24, 128-130, 132-34, 138-40, 142-44, 148-50, 152-53, 155, 159-61, 163-68).  For

these requests, Plaintiff objected "to the extent that [the request] seeks documents

protected from disclosure by the attorney-client privilege, work-product doctrine, law[-

]enforcement privilege, and government deliberative-process privilege." *Id.*

Plaintiff also asserts:

> The United States has already produced the IRS's complete paper examination file for the Defendants in this matter, and will comply with its obligations to supplement its production to the extent additional responsive documents are located. [The] [r]equest . . . seeks documents from an individual who was never assigned to examine the relevant tax returns. The fact that such individual may have been consulted by an examining officer for [his/her] knowledge of a particular subject matter area does not make [him/her] a source of relevant information for purposes of this case. Notwithstanding the irrelevance of the revenue agent's decision-making process at the administrative level, any information the revenue agent utilized in reaching her decision is reflected in the examination file and revenue agent report already provided to Defendants.[1]

*Id.*

In response to the request for statistical models generated or reviewed, Plaintiff asserts, "the IRS reviewed any and all statistical models provided to the IRS by the taxpayers and/or their representatives during the examination, which are already in Defendants' possession and control. The IRS did not review or generate any other responsive statistical models." *Id.* at 509.

Plaintiff also submitted declarations from each of the employees detailing his/her position within the IRS and involvement with Defendants' refund analysis. (Docs. #s 36-1–36-6). First, Joseph Roussos, a General Business Credits Practice Network Coordinator and Subject Matter Expert with the IRS's Large Business and International Division ("LB&I"), received a question from the revenue agent, and "[he] provided her with general information about Section 41 tax credits and sample examination reports

---

[1] In response to request 149, Plaintiff added, "The examination file produced contains the following documents specifically responsive to this request:  USA-001961-65[,] USA-002528-32[,] USA-002734-36[, and] USA-002744-51."  (Doc. #33-7, *PageID* #506).

involving the taxpayer's industry."  (Doc. #36-1, *PageID* #583).  "Any advice [he] provide[s] . . . is informative and non-binding—the revenue agent is free to accept or reject it at [his or her] discretion."  *Id.*

Kurt Kuxhausen, a Senior Program Analyst for Abusive Transactions and Technical Issues with the IRS's Small Business/Self Employed Division (SB/SE), provided the revenue agent "with guidance as to how to approach the Section 41 and 179D issues in her examination."  (Doc. #36-2, *PageID* #585).  Jeanette Czachur, a Senior Program Analyst for Abusive Transactions and Technical Issues with IRS's SB/SE, was copied on emails from Kuxhausen and the revenue agent.  (Doc. #36-4, *PageID* #589).  She also "communicated with the revenue agent directly to ensure that her case was coded correctly and for internal coordination purposes, and to provide her with subject matter guidance on her work papers."  *Id.* at 589-90.

Sharon Jenkins, a Revenue Agent for Abusive Transactions with SB/SE, "received summary data from the revenue agent for coordination purposes and advised the agent as to who, elsewhere in the IRS, might provide substantive guidance for developing the case."  (Doc. #36-5, *PageID* #591).  Wayde Smith, a General Engineer, provides engineering assistance to revenue agents when their examinations involve technical subject matter.  (Doc. #36-6, *PageID* #592).  At the revenue agent's request, he suggested questions to ask Defendants and documents to request.  *Id.*  He also "provided feedback on the taxpayers' responses and general guidance on the taxpayers' positions."  *Id.*

Satpal Bir, a Statistical Sampling Coordinator with LB&I, "evaluated the attribute sample and wrote a brief report, which [he] provided to the Revenue Agent, in which [he]

concluded that the sample was not valid for purposes of determining the dollar amount of Qualified Research Expenses for various reasons." (Doc. #36-3, *PageID* #588). Plaintiff notes that of the six, Satpal Bir is the only person listed in its initial disclosures as a witness. Plaintiff acknowledges that "it erred by including Mr. Bir on its initial disclosures as a potential fact witness. Mr. Bir has no personal knowledge of any facts in this case and the United States has no intention of calling him as a fact witness." (Doc. #36, *PageID* #570). Plaintiff indicates it will amend its disclosures with the Court's leave. Plaintiff also notes that at this time, due to the parties' sampling agreement, expert testimony regarding sampling will likely not be necessary. However, if sampling becomes an issue, Plaintiff might want to use Mr. Bir as an expert witness and will then make all disclosures required by Fed. R. Civ. P. 26(a)(2). *Id.* at 570, n.9. Finally, Plaintiff contends that "all documents reflecting Mr. Bir's input into the examination have already been produced to Defendants." *Id.* at 570.

### 3. Defendants' First Set of Requests for Production of Documents and Plaintiff's Responses

In each of Defendants' twenty-three requests for production, they ask Plaintiff to provide the documents that support its response to each corresponding interrogatory. (Doc. #33-3, *PageID* #s 445-64). In each of its responses, Plaintiff "cross-references and incorporates its General Objections above and its Response to . . ." each corresponding interrogatory. *Id.* Plaintiff also provided a privilege log. (Doc. #33-4, *PageID* #s 465-70).

### 4.    Beyond the Scope of Discovery/Relevancy

Defendants have the initial burden of showing that the documents they seek are relevant to either party's claims or defenses.  *Mayer,* 2016 WL 1632415, at *2 (citations omitted).  They contend that the requested records are within the scope of discovery because "Plaintiff has relied on the opinions of the Exam officials in crafting its cause of action and responses to Discovery."  (Doc. #33, *PageID* #382).  Further, "Plaintiff pointed the Court to the underlying reports and examinations as having provided, in part at least, the basis upon which the suit was filed." *Id.* at 384.[2]  As a result, Defendants contend that they "should be able to discover the factual and specific legal basis for the underlying examination decision if Plaintiff is directing the Court to the examination as part of the 'fair notice' to the Quebes of the claims in the lawsuit." *Id.*

The record establishes that Plaintiff has provided Defendants with the factual and legal basis for the present case.  For example, the Amended Complaint sets forth several reasons:

> QHI claimed the credits for activities that did not constitute qualified research under 26 U.S.C. § 41(d), in part, because QHI did not engage in technological or scientific research to design and/or create new or improved business components of QHI. . . .  QHI did not maintain, and did not claim and compute credits under 26 U.S.C. § 41 with, sufficient documentation and substantiation of the percentage of overall work time . . . , the hours and wages attributable to such work . . . , and the nature and specifics of such work . . . .

(Doc. #7, *PageID* #42).

---

[2] Defendants are referring to and later cite to Plaintiff's Reply to Defendants' Supplement to Rule 26(f) Report of the Parties (Doc. #17).

Plaintiff's response to Interrogatory 1 and the documents it produced contain additional details.  For example, Revenue Agent McGraw concludes in her Revenue Agent Report (RAR) that alliantgroup's statistical sampling is invalid, and she explains why.  (Doc. #37-1, *PageID* #s 610-14).  She also indicates that QUI "did not engage in any qualified researching activities, but was engaged to install electrical systems based on plans and specifications created and approved by the underlying contractors and customers."  *Id.* at 614-15.  Information such as this is sufficient to fairly alert Defendants to the factual and legal basis of Plaintiff's claims.

Defendants assert, "The Government's impressions during the administrative examination can provide the Defendants guidance in preparing a defense."  (Doc. #38, *PageID* #855).  They further contend that because the analysis of the Research Tax Credit is "complicated and cumbersome with a multitude of issues," they are attempting "to narrow down the myriad of issues possible . . . ."  *Id.*  However, more information about the IRS's examination will not likely narrow the number of issues because Plaintiff is not bound by it in the present case.

Plaintiff is not bound because "a challenge to a tax determination results in a trial *de novo* rather than a review by this Court of an existing administrative record . . . ." *United States v. Nordberg,* No. 93-12681, 1996 WL 170119, at *2 (D. Mass. April 8, 1996).  *See also Ky. Trust Co. v. Glenn,* 217 F.2d 462, 466 (6th Cir. 1954) ("The action of the Commissioner in making the assessment was, properly, of no concern to the jury . . . ."); *Trinity Indus., Inc. v. United States,* 757 F.3d 400, 413 (5th Cir. 2014) ("The district court correctly held that the report's conclusion, though admissible evidence, was neither

15

binding nor entitled to a presumption of correctness.  In tax refund actions, the district

court reviews de novo the Commissioner's decision regarding a taxpayer's tax liability.")

(footnotes omitted); *LPCiminelli Interests, Inc. v. United States,* No. 09-cv-274, 2012

WL 5499444, at *4 (W.D.N.Y. Nov. 13, 2012) ("[T]he factual considerations and legal

analysis employed by the audit team during their examination of LPCiminelli's

consolidated tax returns, and in their proposed adjustments to the Commissioner's tax

assessment, must be deemed to be of no consequence to the *de novo* review required in

this refund action . . . .") (citation and internal quotation marks omitted).

Thus, even if the IRS made substantial errors in its examination of Defendants'

taxes, Plaintiff might still prevail.  "[T]he court is to 'place itself in the shoes of the

commissioner' and apply the law to the facts presented.  Even if an assessment was made

on erroneous grounds, it must be upheld if it is appropriate under any theory." *Mayes v.

United States,* No. 84-5157, 1986 WL 10093, at *3 (W.D. Mo. June 12, 1986) (quoting

*Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. United States*, 487 F.Supp. 801,

805 (E.D.N.C. 1979)) (citing *Blansett v. United States*, 283 F.2d 474, 478 (8th Cir. 1960);

*Bernstein v. Comm'r*, 267 F.2d 879, 881 (5th Cir. 1959)).  Defendants acknowledge this

point in their Response in Opposition to Plaintiff's Motion to Compel, "the factfinder will

review and determine whether a process of experimentation is present *not the Plaintiff* . . .

."  (Doc. #50, *PageID* #1415) (emphasis added).

Defendants contend that a court in the Southern District of Ohio has already

addressed this issue in *NetJets Large Aircraft, Inc. v. United States,* No. 2:11-cv-1023,

2014 WL 1672588 (S.D. Ohio Apr. 28, 2014).  In that case, Magistrate Judge Kemp

rejected the United States' argument that IRS deliberations are irrelevant and granted the taxpayers' motion to compel. *Id.* *NetJets*, however, is significantly different from the present case. In *NetJets*, the taxpayers sought relief under four grounds, one of which asserted they were not subject to the tax at issue. *Id.* at *3. The court acknowledges that if the taxpayer were proceeding under this ground alone, "they would not need most of the discovery being sought in the motion to compel." *Id.* The present case involves one such issue, rather than the multiple issues involved in *NetJets.* The result: The present case is not guided by the broader discovery permitted in *NetJets*; it is instead circumscribed by the narrower focus of discovery, which is unconcerned with the IRS's deliberations. Defendants' reliance on *NetJets* is therefore misplaced.

Turning to the requested documents at issue, a review of the personnel files Defendants have requested reveals that they have not met their initial burden to show how the personnel files of the six employees are relevant. Defendants, in fact, fail to specifically mention the personnel files in their Motion. "Because of the extremely private nature of personnel files, the court does not order production of such files except upon a compelling showing of relevance by the requesting party." *Blackmond v. UT Med. Grp.,* No. 02-2890, 2004 WL 3142214, at *1 (W.D. Tenn. Nov. 2, 2004) (citing *Miller v. Fed. Express Corp.,* 186 F.R.D. 376, 384 (W.D. Tenn. 1999). Defendants do not provide a compelling, or even any, reason why these files are relevant and discoverable.

Additionally, Defendants do not provide any reason why documents reflecting the employees' job descriptions and duties are relevant to any parties' claim or defense.

17

Although it seems to be a somewhat specific time period, it is not clear why Defendants only request the descriptions and duties for the time period between June 1, 2015 and June 30, 2015.  Defendants do not give any reason for the specific date range or explain its significance to the case.  Thus, Defendants' requests for the employees' job descriptions and duties seek documents beyond the scope of discovery.

Further, Defendants fail to show how the employees' notes and files; time entries and work logs; reports and documents generated by the employees; documents reviewed by the employees in preparing their opinions; documentation the employees specifically reviewed; documents reflecting the expenditures incurred by the employees; meeting notes produced wherein the employees were present; and email correspondence between the employees are relevant to any parties' claim or defense.  Defendants are therefore thwarted again by lack of relevance.  *See Nordberg,* 1996 WL 170119, at *2 ("Information about people who participated in the audit are not relevant, nor are notes made by IRS employees during the audit."); *Mayes,* 1986 WL 10093, at *3 ("IRS employee's legal analysis is not relevant to any of the issues herein and is thus outside the scope of discovery."); *United States v. Elsass*, No. 2:10-cv-336, 2012 WL 1409624, at *5 (S.D. Ohio Apr. 23, 2012) (King, M.J.) (holding that taxpayers could not discover internal IRS communications or the personal views of the IRS agents).  "While no doubt disclosure of such information would be of interest to plaintiff, it is not essential nor required for proper preparation."  *Detroit Screwmatic Co. v. United States,* 49 F.R.D. 77, 79 (S.D.N.Y. 1970) (citation omitted).

There is no need to determine whether statistical models generated or reviewed are relevant to the case, as Plaintiff asserts that the IRS only reviewed statistical models provided by the taxpayers and did not review or generate any other responsive statistical models.  There is no reason in the present record to doubt Plaintiff's assertion.

### 5.    Plaintiff's Privilege Log

Defendants contend that "Plaintiff's initial privilege log failed to properly claim the privilege and identify the documents withheld, thereby waiving the privilege claimed." (Doc. #33, *PageID* #376).  They further assert that Plaintiff's subsequent privilege logs fail to provide adequate descriptions of the privilege claimed, the specific request to which each assertion of privilege pertains, subject matter, dates produced, authors, and recipients of the withheld documents as required by [S.D. Ohio Civ. R.] 26.1(a) and FRCP 26(b)."  *Id.* at 376-77.

The Court will review Plaintiff's August 17, 2016 privilege log, as it is the most recent.  Plaintiff indicates that it has produced 3,238 pages of documents and has only asserted privilege over seventeen documents, three of which were redacted in full and fourteen of which were partially redacted.  (Doc. #36, *PageID* #570).[3]

Under Fed. R. Civ. P. 26(b)(5),

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must:  (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that,

---

[3] Defendants acknowledge that attorney work-product privilege appears to apply to the document identified as Bates No. USA000001.  Plaintiff's log also contains documents with third-party taxpayer information redacted; Defendants do not seek to compel disclosure of that information.

> without revealing information itself privileged or protected, will enable other parties to assess the claim.

Rule 26.1 of the Southern District of Ohio Civil Rules further provides, "Any privilege log shall refer to the specific request to which each assertion of privilege pertains. A privilege log shall list documents withheld in chronological order . . . ."

The Federal Rules do not specifically list what must be included in a privilege log. The advisory committee's note explains, "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26(b)(5) advisory committee's note, 146 F.R.D. 401, 639 (Apr. 22, 1993).

As a result, courts have set out elements to be identified in privilege logs. For example, some courts require:

> (a) The author(s) and all recipients (designated so as to be clear who is the sender and who [is] the receiver), along with their capacities/roles/positions.
> (b) The document's date.
> (c) The purpose and subject matter of the document.
> (d) The nature of the privileged asserted, and why the particular document is believed to be privileged.

*Mafcote, Inc. v. Fed. Ins. Co.,* No. 3:08-cv-11, 2010 WL 1929900, at *6 (W.D. Ky. May 12, 2010) (citations omitted).

Notably, "the withholding of such a privilege log may subject a party to sanctions under Rule 37(b)(2) and may be viewed by the court as a waiver of any privilege or protection." *Banks v. Office of Senate Sergeant-at-Arms,* 222 F.R.D. 7, 20 (D.D.C. 2004)

(citing Fed. R. Civ. P. 26 advisory committee's note; *Avery Dennison Corp. v. Four Pillars,* 190 F.R.D. 1, 2 (D.D.C. 1999)).  For example, one court found that the defendants waived their right to assert attorney-client privilege and work-product immunity because they did not provide a privilege log until the plaintiff filed a motion to compel, and defendants' responses only included general objections.  *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 668 (D. Kan. 2004).

In the present case, Plaintiff provided a privilege log with its first responses to Defendants' Requests for Production.  Generally, Plaintiff's privilege log includes most of the information courts require.  Specifically, it contains an author for each entry and a recipient is listed when applicable.  When possible, Plaintiff included the date.  Finally, Plaintiff identified the privilege type and provided an adequate description.

However, Plaintiff did not include the request number to which each assertion of privilege pertains.  Additionally, Plaintiff did not list the documents in chronological order.  Due to these omissions and shortcomings, Plaintiff's privilege log does not meet the requirements of S.D. Ohio Civ. R. 26.1(a).  This, however, is not fatal to the privilege log in this case because it contains sufficient information for Defendants to assess each claimed privilege.  Thus, Plaintiff has not waived the right to assert privileges.

This Court ordered Plaintiff to submit to the Court unredacted copies of each document it claims are privileged.  This Court then completed an *in camera* review of those documents.

### a.    *Deliberative-Process Privilege*

Plaintiff asserts that four documents are protected by the deliberative-process privilege.  (Doc. #33-10, *PageID* #s 529-30).  This includes one whole document and portions of three others.  The deliberative-process privilege was created "to protect communications made in the course of formulating agency decisions on legal and policy matters."  *Proctor & Gamble Co. v. United States*, No. 1:08-cv-608, 2009 WL 5219726, at *2 (S.D. Ohio Dec. 31, 2009) (Black, M.J.) (citations omitted).  In practice, the privilege allows employees to discuss issues candidly without fear that their ideas will later be available to the public.  In addition, "[t]he privilege's purposes are . . . to protect against premature disclosure of proposed policies [or decisions] before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Id.* (quoting *Schell v. U.S. Dep't of Health & Human Servs.,* 843 F.2d 933, 937 (6th Cir. 1988); *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980)).

The deliberative-process privilege applies when documents are predecisional and deliberative.  *U.S. ex rel. Williams v. Renal Care Grp., Inc.,* 696 F.3d 518, 527 (6th Cir. 2012) (citing *Norwood v. FAA,* 993 F.2d 570, 576 (6th Cir. 1993)).  "A document is predecisional when it is received by the decisionmaker on the subject of the decision prior to the time the decision is made, and deliberative when it reflects the give-and-take of the consultative process."  *Id.*  The privilege does not always protect whole documents, and if it is possible to separate the privileged information from the factual and

investigative information without compromising the confidentiality of the privileged information, it should be separated.  *Williams,* 696 F.3d at 527.

The deliberative-process privilege is not absolute.  *See Netjets Large Aircraft, Inc. v. United States,* No. 2:11-cv-1023, 2015 WL 1526346, at *6 (S.D. Ohio Apr. 3, 2015) (Kemp, M.J.).  Even if a document is predecisional and deliberative, several factors guide the determination of whether the privilege is overcome.  The factors include: "(1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the role of government in the litigation, and (4) the potential consequences of disclosure of the information."  *Id.* (citing *F.T.C. v. Warner Commc'ns Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984)).  "Ultimately, in each case, the determinative question is whether production of the contested document would be injurious to the consultative functions of government that the privilege of non-disclosure protects."  *Proctor & Gamble Co.,* 2009 WL 5219726, at *2.

Plaintiff redacted portions from three sets of e-mails.  The first set of emails (USA002370-2372) contains three emails between Kurt Kuxhausen, Senior Program Analyst for Abusive Transactions and Technical Issues, and Rebecca McGraw, Revenue Agent.  Plaintiff redacted both emails from Kuxhausen but left the email from McGraw. These emails are precisely what the deliberative-process privilege is designed to protect. First, they both occurred on June 12, 2015, long before McGraw issued the RAR on November 20, 2015 (Doc. #37-1, *PageID* #608), making them predecisional.  Second, both redacted emails contain Kuxhausen's suggestions, recommendations, and opinions. Therefore, Kuxhausen's emails are protected by deliberative-process privilege.

The next set of emails (USA2747-2749)[4] contains six emails between McGraw and Satpal Bir, Statistical Sampling Coordinator.  Plaintiff redacted portions of three of Bir's emails and did not redact McGraw's emails.  In USA002748, Plaintiff redacted two paragraphs.  However, Plaintiff had already provided this email in response to a Freedom of Information Act request with only one paragraph redacted.  (Doc. #54-7, *PageID* #1553).  The paragraph beginning "It is imperative . . ." is not redacted, but the next paragraph is.  That paragraph and the other redacted portions of Bir's emails are protected by deliberative-process privilege.

Bir's emails are predecisional, as they occurred between April 18, 2014 and June 13, 2014.  Bir's emails are also deliberative—the redacted portions contain his opinions and recommendations and IRS strategies.  Further, McGraw is not bound by his recommendations and can choose to ignore them.  (Doc. #36-3, *PageID* #587).  This reflects the give and take of the consultative process.  Thus, the deliberative-process privilege protects Bir's emails.

Plaintiff also asserts that an entire IRS memorandum and sample RAR are protected by deliberative-process privilege."[5]  (Doc. 33, *PageID* #529).  Richard Goldman, Deputy Associate Chief Counsel, explains the contents of the documents:

> An internal IRS memorandum which consists of a six-page participant case-examination guidance, undated, author not identified, not paginated, and thirty page sample Revenue Agent Report (RAR), undated, author not identified,

---

[4] The redacted portion of USA002734 is also redacted in USA002747-2749.
[5] Plaintiff also asserts 26 U.S.C. § 6103 to protect third-party taxpayer's information.  Defendants have not challenged this assertion.

paginated.  The examination guidance details coordination, tax issues, suggested audit techniques, and analysis of penalties and penalty relief.  The sample RAR is a template to assist Revenue Agents in drafting RARs involving research credit issues, including:  qualified research expenses (I.R.C. § 41(b)); qualified research activities (I.R.C. § 41(d)); base period issues (I.R.C. § 41(c)); and, substantiation issues (Treas. Reg. § 1.41-4(d) and I.R.C. § 6001)).  The sample RAR consists of discussion and analysis of issues relating to sections 41 and 6001, pertinent legal analysis, IRS advisory opinions, statutory exceptions, legal tests, substantiation tests, and conclusions, which are analyzed in the context of hypothetical factual situations.

(Doc. #36-7, *PageID* #600).

Although undated, it is clear that the memorandum and draft RAR are predecisional as both assist revenue agents before they reach their decisions.  *See E.E.O.C. v. Peoplemark, Inc.,* No. 1:08-cv-907, 2010 WL 748250, at *3 (W.D. Mich. Feb. 26, 2010) ("[The transmittal memorandum from EEOC General Counsel to EEOC Commissioners] is clearly protected by the governmental deliberative process privilege . . . . Although undated, it was by its terms a deliberative documents presented to the EEOC decision-makers . . . prior to and for the purpose of reaching the decision to file this lawsuit."); *Brown v. E.E.O.C.,* No. 4:09-cv-444, 2010 WL 1929913, at *3 (W.D. Ky. May 12, 2010) ("[T]he undated work notes are clearly predecisional and relate to the EEOC's internal decisionmaking process."); *B&P Co. v. I.R.S.*, No. 3:14-cv-232, 2015 WL 4455747, at *4 (S.D. Ohio July 20, 2015) (Rice, D.J.) ("It is beyond dispute that the draft RAR is predecisional; it is not a final determination of B & P's tax liability . . . .").

Both documents are also deliberative, as they reflect an internal process of the IRS.  The use of each document is reflected in McGraw's final RAR.  She considered the

information in the documents and was required to decide what applied to her examination. In other words, McGraw was required to choose some ideas over, or instead of, others. This shows that these documents reflect the give and take of the consultative process. Disclosure of these documents could very easily confuse the issues and mislead the public by suggesting reasons and rationales for courses of action that were not ultimately taken. Therefore, the deliberative-process privilege protects the memorandum and draft RAR.

The analysis turns next to whether the privilege is overcome by the pertinent factors, *Williams,* 696 F.3d at 527. The factors ultimately lean in Plaintiff's favor. First, for the reasons explained above, this evidence is not relevant to the present case. Further, the memorandum and draft RAR do not even mention Defendants. Second, although this evidence is not available to them from other sources, other evidence is available to Defendants. Specifically, they doubtlessly have documents and information they relied on to assert their entitlement to tax credits and keep such documents in the ordinary course of business. The third factor favors Defendants. As Plaintiff, the government's role in this case is significant. Finally, if disclosed, there is potential for significant consequences. The disclosure of the emails may inhibit the communication between revenue agents and specialists. Further, the disclosure of the memorandum and draft RAR "might disclose IRS strategy and deliberations about potential subject matters of inquiry and strategic decisions in what to pursue and not to pursue." *Proctor & Gamble Co.,* 2009 WL 5219726, at *7. Because the majority of factors lean toward Plaintiff, and for the reasons stated above, the deliberative-process privilege shields the redacted

portions of the emails from discovery.  Ultimately, in this case, production of the contested documents would be injurious to the consultative functions of the IRS that the privilege protects

For these reasons, the emails (Bates No. USA002370-2372, USA002734, USA002747-2749[6]) and memorandum and draft RAR (Bates No. USA002212-2247) are protected by deliberative-process privilege.

### b.    *Attorney-Client Privilege*

Plaintiff asserts that three documents are protected under attorney-client privilege. (Doc. #33-10, *PageID* #s 529-30).  Although three documents are listed, the same two sentences are redacted in each document.  Plaintiff describes it as a "[p]ortion . . . of email chain between IRS Statistical Sampling Coordinator and Revenue Agent reflecting Chief Counsel advice regarding qualified research expense cases."  *Id.*  Specifically, one redacted paragraph is in an email to McGraw from Bir, and the other redacted paragraph is in McGraw's response.

Defendants correctly observe that Plaintiff provided this email in response to a Freedom of Information Act request with only one paragraph redacted.[7]  (Doc. #33-12, *PageID* #s 535-36).  McGraw's response indicating that she "already received the litigation hold form . . ." is not redacted.  The section that remains redacted refers to the same subject and does not disclose Chief Counsel's legal advice.  Therefore, the attorney-

---

[6] This does not include the paragraph in Bates No. USA002748 that was already provided to Defendants.
[7] The IRS redacted part of a sentence and one full paragraph in *PageID* #535.  However, on *PageID* #536, the part of the sentence is not redacted.

client privilege does not apply, and Plaintiff must produce unredacted versions of USA002735, USA002745, and USA002750-2751.

### c.      Law-Enforcement Privilege

Plaintiff asserts that the law-enforcement privilege protects three documents, including two whole documents and portions of another.  Plaintiff describes all three as IRS documents reflecting IRS law-enforcement techniques and procedures.  (Doc. #33-12, *PageID* #s 535-36).

Law-enforcement privilege is a common-law privilege recognized by state and federal courts.  *E.g., Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.,* No. 2:05-cv-0673, 2006 WL 3311514, at *3 (S.D. Ohio Nov. 13, 2006) (Kemp, M.J.) (citing *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C. Cir. 1984)).  *See Morrissey v. City of N.Y.*, 171 F.R.D. 85, 90 (S.D.N.Y. 1997).  The party asserting law-enforcement privilege bears the burden of showing that it applies.  *In re City of N.Y.,* 607 F.3d 923, 944 (2d Cir. 2010).  To meet that burden, the party must first establish that the documents contain information the privilege is intended to protect.  The privilege is intended to protect "information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise . . . interfere[ ] with an investigation.'"  *Id.* (quoting *In re Dep't of Investigation of City of N.Y.,* 856 F.2d 481, 484 (2d Cir. 1988)).  But, the law-enforcement privilege is not absolute.  *City of N.Y.,* 607 F.3d at 945.

Although there is a strong presumption against lifting the privilege, the party seeking disclosure can rebut the presumption by showing "(1) that [the suit] is non-frivolous and brought in good faith, (2) that the information sought is [not] available through other discovery or from other sources, and (3) that the information sought is importan[t] to the party's case." *Id.* (citation and internal quotation marks omitted). If the presumption is rebutted, the court's analysis is still not over. "The public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *Tri-State Hosp. Supply Corp. v. United States,* 238 F.R.D. 102, 103 (quoting *In re Sealed Case,* 856 F.2d 268, 272 (D.C. Cir. 1988)); *see also United States v. Pirosko,* 787 F.3d 358, 365 (6th Cir. 2015) ("In evaluating the government's [law-enforcement] privilege argument, we agree with the district court's decision to apply a balancing approach, weighing the government's concerns against the needs articulated by [the defendant/Appellant].").

In the present case, Plaintiff met its burden of showing that the two portions redacted from USA003090, and all of USA003236 and USA003165 contain information pertaining to IRS law-enforcement techniques and procedures. *See United States v. Sixty-One Thousand Nine Hundred Dollars,* No. 10 Civ. 1866, 2010 WL 4689442, at *1 (E.D.N.Y. Nov. 10, 2010) ("The IRS checklist seems to be precisely the type of document that was meant to be protected by this judge-made immunity; its revelation could hinder future enforcement."). Defendants have not successfully rebutted the presumption against lifting the privilege. Although the suit is non-frivolous and brought in good faith and the information sought is not available through other discovery or from

29

other sources, Defendants have not established that the information sought is important to their case. They do not have a significant need for access to this information because the redacted information does not refer specifically to them. In contrast, the IRS's ability to conduct current or future investigations may be significantly impaired if these documents were to be released. Therefore, law-enforcement privilege applies to all three documents.

**B.** **Defendants' Motion to Compel Responses to Interrogatories and Identification of Lay Witnesses**

**1.** **Defendants' Motion to Compel Responses to Interrogatories**

Plaintiff contends that Defendants' second Motion is duplicative and frivolous, as Defendants' first Motion to Compel also sought responses to interrogatories. (Doc. #45, *PageID* #s 1197-98). Plaintiff explains:

> It is an abuse of the litigation process for Defendants to demand that the United States repeatedly respond to the same motion and that the Court repeatedly decide that motion. On this ground, the United States asks that the Court deny the October Motion as to the interrogatories without prejudice, strike the portion of Defendants' October memorandum of law that addresses the Interrogatories, and resolve the issue on the papers already submitted to the Court.

*Id.* at 1198.

Although Defendants argue that their first Motion to Compel does not address Plaintiff's responses to interrogatories, it is easy to see why Plaintiff believed it did. Most notably, at the end of Defendants' Motion to Compel, they specifically "request that the Court GRANT its Motion to Compel *Responses to Interrogatories* and Requests for Production and Order the United States of America to provide adequate responses to

30

*Defendants' First and Second Set of Interrogatories* Numbers 1-25 . . . ."  (Doc. #33,

*PageID* #388) (emphasis added).

Despite Defendants' conflicting statements in their first Motion to Compel, it

would be unreasonable for the Court to refuse to consider Defendants' second Motion on

that ground.  The Court has not ruled on the first Motion, and Plaintiff had the

opportunity to review Defendants' second Motion before responding.  Therefore, no

prejudice will befall Plaintiff from the Court's consideration of Defendants' Motion to

Compel Responses to Interrogatories (Doc. #s 39-40), Plaintiff's Response to

Defendants' first Motion to Compel (Doc. #36), and Plaintiff's Response to Defendants'

second Motion to Compel (Doc. #45).

### a.    *Defendants' Interrogatories*

Defendants' first set of interrogatories includes twenty-four requests,[8] and the

second set includes only one.  (Doc. #s 40-1, 40-2).  Defendants categorize their

interrogatories into three groups: "a) which of QHI's research related projects it contends

do not qualify under Section 41 of the Internal Revenue Code; b) why it contends, these

projects fail to meet the requirements of Section 41 and 179D; and c) the factual basis for

each."  (Doc. #40, *PageID* #873).

Defendants first ask Plaintiff to "provide a complete list of reasons of why the

Plaintiff contends that Defendants are not entitled to the R&D tax credits it claimed in the

2009 and 2010 tax years."  (Doc. #40-1, *PageID* #889).  In Interrogatory 2, they ask for

---

[8] Defendants' Interrogatory 24 refers to Defendants' Requests for Admission.  Defendants withdrew all their Requests for Admission.  Therefore, the Court will not consider address Interrogatory 24.

the factual basis for each contention set forth in response to Interrogatory 1.  *Id.*  The

interrogatories that follow request that Plaintiff identify general errors, such as

Interrogatory 6—"Do you contend that the Taxpayer has erred, in any way, in computing

the claimed qualified research expenses for the research and development tax credits?"—

as well as specific exceptions, such as Interrogatory 18—"Do you contend that

Defendants' claimed research activity is excluded because it falls under an adaptation

exception?"  *Id.* at 889-94.

### b.    *Plaintiff's Responses and Objections*

In response to Defendants' Interrogatory 1, Plaintiff provided a thirteen-page

answer detailing several objections as well as reasons Defendants are not entitled to the

R&D tax credits they claimed in 2009 and 2010.  (Doc. #40-3, *PageID* #s 933-46).  For

example, Plaintiff addresses the Section 174 test:

> QHI . . . did not engage in research with respect to which
> expenditures may be treated as expenses under 26 U.S.C. [§]
> 174.  26 U.S.C. [§] 41(d)(l)(A). . . .  The activities . . . did not
> involve identifying uncertainties as to the capability, method,
> or appropriate design for developing or improving a product,
> process, or appropriate design and eliminating the
> uncertainties within the meaning of 26 U.S.C. [§] 41(d)(l)(A).
> QHI . . . installed electrical components and systems pursuant
> to blueprints, drawings, designs, and specifications prepared
> by engineers and/or architects, who were employed by others.
> . . .  Assuming *arguendo* that any of the activities for which
> the Defendants and QHI claimed or reported [§] 41 credits
> constitute research, it was research (a) conducted after the
> beginning of commercial production of the business
> component, (b) related to the adaptation of an existing
> business component to a particular customer's requirement or
> need, and/or (c) related to the reproduction of an existing
> business component . . . , and it therefore did not constitute
> qualified research for purposes of 26 U.S.C. [§] 41.  26

U.S.C. [§] 41(d)(4)(A), (B), and/or (C).  *E.g.* QHI0024-40, 0178-0198; Subcontract between Romanoff Electric and Rudolph/Libbe, dated March 11, 2009, QHI000657-77; Solicitation Offer and Award, Radiology Addition at the Veterans Affairs Medical Center, Chillicothe, Ohio. Project No. 538-09-CSI-104, QHI4690-5841.

.     .     .

Also, Defendants and QHI claimed [§] 41 credits based on wages paid for field testing electrical work to confirm or validate it functioned or worked as the customer and the contract documents required, not to test and refine a hypothesis to determine the strengths and weakness of an alternative tested in a process of experimentation or to determine whether other alternatives might be better suited. *E.g.* Waite High School Renovation Projection., QHI009817, 9822-3, 9827, 9843.  This type of testing does not satisfy the requirements of 26 U.S.C. [§] 41(d)(l)(A), (B), and/or (C), and does not constitute qualified research.  *United States v. Davenport*, 897 F.Supp. 2d 496, 506-7 (N.D. Tex. 2012).

*Id.* at 934-97.

In responses to Interrogatories 2-12, 15, 17-18, Plaintiff "cross-references and incorporates its General Objection above and its Response to Interrogatory No. 1."  *Id.* at 946-53.  Further, Plaintiff objects to all of Defendants Interrogatories as premature because discovery has only recently begun in this case.  *Id.* at 933-61.  Finally, Plaintiff objects to Interrogatories 13 and 14 on the ground that they are requesting an opinion on a pure matter of law.  *Id.* at 951.

### c. Premature

Plaintiff asserts that the Federal Rules of Civil Procedure allow courts to defer answers to contention interrogatories because they are best left until the end of discovery. (Doc. #36, *PageID* #561) (citing Fed. R. Civ. P. 33, 1970 Notes).  Defendants agree that this is the normal course of discovery.  However, they contend that Plaintiff is "not on the

same footing as a typical plaintiff that is beginning to gather information; rather it has the benefit of its lengthy administrative review that should have yielded sufficient information to determine [its] reasons for bringing suit."  (Doc. #40, *PageID* #875) (citing Fed. R. Civ. P. 11; *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,* 175 F.R.D. 646, 652 (C.D. Cal. 1997)).

Although Defendants are correct that Plaintiff is not beginning to gather information, there are several reasons why Plaintiff's answers should be deferred to the end of discovery.  First, the IRS and Plaintiff have consistently asserted that Defendants have failed to provide sufficient documentation.  (Doc. #45, *PageID* #1200) ("Defendants refused to provide the IRS with the information necessary to evaluate the alleged research and development activity."); (Doc. #7, *PageID* #42) ("QUI did not maintain, and did not claim and compute credits under 26 U.S.C. § 41 with, sufficient documentation and substantiation of the percentage of overall worktime that specified employees spent performing or supervising performance of allegedly qualified research . . . .").  If Defendants are now producing these documents, it is reasonable that Plaintiff would need time to examine the documents prior to responding to Defendants' Interrogatories.  Second, the IRS examined QUI's activities for tax years 2008, 2010, and 2011, but did not complete its review of Defendants' taxes for the years at issue in this case.  (Doc. #40, *PageID* #869).  Third, Plaintiff is not bound in the present case by the decisions of the IRS and may present new and/or different arguments that require additional discovery.  *See, e.g.*, *Nordberg,* 1996 WL 170119, at *2; *Ky. Trust Co.,* 217 F.2d at 466; *Trinity,* 757 F.3d at 413 (5th Cir. 2014).  Finally, Defendants have produced over 343,000

34

pages and may still produce more.  It is reasonable that Plaintiff would need to review

those documents before responding to interrogatories.

Defendants' Interrogatories further illustrate why Plaintiff's responses should be

deferred to the end of discovery.  For example, Defendants' Interrogatory 20 asks

Plaintiff,

> Do you contend that Quebe did not create technical
> specifications for government owned buildings during the
> 2009-2010 tax years?  If you do so contend, identify the
> activities conducted by Quebe that do not comply with the
> creation of technical specifications.

(Doc. #40-1, *PageID* #893).  Although this seeks discoverable information, it is

reasonable for Plaintiff to ask Defendants, as it does in its Interrogatory 9 (Doc. #43-5,

*PageID* #1186), to provide the names of the architects, engineers and/or other persons

and identify the specifications before responding to whether Quebe and/or QHI created

the technical specifications.  Similarly, it is reasonable for Plaintiff to ask Defendants to

identify the business components and uncertainties for each project, *id.* at 1187-88,

before responding to an interrogatory that asks if Defendants conducted any qualified

research (Doc. #40-3, *PageID* #s 946-47).  Therefore, although Plaintiff must respond to

Defendants' Interrogatories 1-12, 15-23, and 25, Plaintiff may defer its responses until

Defendants comply with this Order.

### d. *Improperly Calling for a Legal Conclusion*

Plaintiff objected to Interrogatories 13 and 14 on the ground that they request an

opinion on a pure matter of law.  Defendants assert that "the Federal Rules of Civil

Procedure specifically permit for the issuance of these types of contention

interrogatories." (Doc. #40, *PageID* #877). Defendants' interrogatories ask:

> 13) Do you contend that the use of interviews and estimations of percentage of employee time performing qualified research activity as allowed in *E.V. Fudim*, 67 TCM 3011, Dec. 49,867 (M). TC Memo. 1994-235 and *Suder v. Commissioner,* T.C. Memo. 2014-201, 2014 WL 4920724 (U.S. Tax Ct.) is an inappropriate mechanism to determine allocation percentages? If so, please state in detail the factual basis for your contention.
>
> 14) Do you contend that project based accounting is the only acceptable methodology that taxpayers may use in determining the Research Credit[?] If you do so contend, please provide the particular code section and cited progeny to support your contention upon which you rely.

(Doc. #40-1, *PageID* #s 891-92). Defendants contend that these interrogatories "request

the Government's opinion as to the proper methodology in calculating the Research

Credit, i.e. an application of law to the facts, not a legal conclusion." (Doc. #40, *PageID*

#877) (citations omitted).

"[A]n interrogatory is not objectionable merely because it calls for an opinion or

contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33, 1970

advisory committee's note, subdivision (b). But, "interrogatories may not extend to

issues of 'pure law,' *i.e.,* legal issues unrelated to the facts of the case." *Id.* For example,

a court found that the following interrogatory "requires defendant to provide a legal

interpretation of the word 'purpose,'" and denied the plaintiff's motion to compel: "What

do YOU contend was required of YOU in order to be able to demonstrate a 'purpose'

under California Welfare and Institutions Code 14085.6 for SB 1255 funds?" *United*

*States ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 682 (E.D. Cal. 2006); *see*

*Anderson v. Werholtz*, No. 07-3275, 2009 WL 392673, at *1 (D. Kan. Feb. 17, 2009)

("Interrogatory No. 4 . . . asks [Defendant] to explain his understanding of the definition

of 'religious exercise' . . . .  Because this question does not ask for an opinion of the law

as applied to the facts, but asks about a purely legal issue, the court sustains the stated

objection and denies plaintiff's motion to compel . . . .").

The interrogatories do not request that Plaintiff apply the law to the facts.  Instead,

each asks Plaintiff to provide its opinion on an issue of pure law.  Defendants asking

Plaintiff in Interrogatory 13 to state the "factual basis for [its] contention" incorrectly

assumes that such a factual basis exists.  It does not when interpreting a question of pure

law.  Therefore, Plaintiff's objections are well taken, and Defendants' Motion to Compel

Responses to Interrogatories 13 and 14 is denied.

### 2.    Defendants' Motion to Compel Identification of Lay Witnesses

Defendants contend that Plaintiff's Identification of Lay Witness does not comply

with the Court's Discovery Plan.  "The identifications numbered 12, 13, 14, 15, 16, and

17 fail to properly identify specific persons with knowledge to establish their case in

chief."  (Doc. #40, *PageID* #881).  For example, in number 16, Plaintiff identifies "IRS

personnel as necessary to establish the allegations listed in their amended complaint."

*Id*.; (Doc. #40-6, *PageID* #973).  Defendants move the Court to Compel Plaintiff "to

identify the [IRS] personnel whom they rely upon."  (Doc. #40, *PageID* #881).

Plaintiff asserts, "The United States cannot fully identify the witnesses it will call

at trial until Defendants respond to the interrogatories requesting identification of third-

party witnesses." (Doc. #45, *PageID* #1199).  Specifically, Plaintiff's Interrogatories request Defendants identify employees of QHI and its subsidiaries who performed work that resulted in alleged R&D credits; officers, construction supervisors, and foremen of QHI's customers who would be familiar with QHI's alleged R&D activities; witnesses to the alleged Section 179D activity; building inspectors; and architects, engineers, and other designers.  *Id.* at 1198-99 (citing Doc. #40-5).

In response to Defendants' request that the Court compel Plaintiff to identify "those IRS personnel necessary to establish the allegations," Plaintiff asserts, "The only issue in this case is whether activities performed by the Defendants' companies qualify for certain tax credits and deductions.  No IRS personnel witnessed these activities, and thus the United States does not expect to call any IRS witnesses or make use of any IRS documents at trial."  *Id.* at 1199.  Plaintiff adds, "Despite efforts to meet and confer, the United States does not understand what relief Defendants seek."  *Id.*

"The deadline for identification of lay witnesses is this Court's principal tool for ensuring that lay witnesses are available for discovery within the time limits set for discovery."  *Paxar Americas, Inc. v. Zebra Techs. Corp.*, No. 3:03-cv-142, 2005 WL 6493791, at *1 (S.D. Ohio Aug. 31, 2005) (Merz, M.J.); *see* General Order No. 1 ("The purpose of this filing of witness lists is to permit timely completion of discovery.").  Plaintiff's identifications 12 through 17 do not name specific individuals.  Therefore, to the extent possible, Plaintiff is required to amend its disclosure of lay witnesses to include the names of specific individuals requested by identifications 12 through 17.

However, Plaintiff represented to the Court that it "does not expect to call any IRS witnesses or make use of any IRS documents at trial" (Doc. #45, *PageID* #1199), and the record provides no reason to doubt its representation.  The Court cannot compel what does not exist.  Therefore, Defendants' request that the Court order Plaintiff "to identify the personnel whom they relied upon" is denied.

### C.  Plaintiff's Motion to Compel Responses to Its Interrogatories

Plaintiff first moved to compel responses to interrogatories in June 2016.  (Doc. #22).  In an effort to resolve the dispute informally and at the parties' request, this Court held several informal discovery conferences, during which the parties agreed to narrow the scope of discovery.  This Court then denied Plaintiff's motion without prejudice to renewal.  (Doc. #30).

According to Plaintiff, "Defendants . . . continue to provide the same evasive and incomplete answers that they served seven months ago.  Defendants' continued obstruction hinders the United States' ability to take timely discovery."  (Doc. #43, *PageID* #1089).  As a result, Plaintiff renewed its Motion to Compel, asserting that Defendants' responses to its interrogatories are inadequate.  (Doc. #42).

Defendants contend that Plaintiff "renewed [its] Motion to Compel prematurely as they have provided supplement[al] discovery responses continuously . . . ."  (Doc. #50,

*PageID* #1406).  Defendants emphasize that QHI has produced over 300,000 pages[9] in response to Plaintiff's requests.  *Id.*

Plaintiff categorizes its interrogatories into three general groups:  "1) Defendants' factual bases for their claimed R&D tax credits[;] 2) information about the employees who allegedly engaged in qualified research; and 3) third party witness information." (Doc. #43, *PageID* #1095).

### 1.    Defendants' Factual Bases for Their Claimed R&D Tax Credits

Plaintiff asserts that Defendants should be compelled to disclose the bases for their claimed tax credits in response to Interrogatories 11 and 12. [10]  For each of the twelve sample projects, Plaintiff asks that Defendants,

> [I]dentify the business component(s) (the term "business component" is defined in 26 U.S.C. Section 41(d)(2)(B)) involved in it, state with specificity what uncertainty concerning the development or improvement of the business component(s) existed (the phrase "uncertainty concerning the development or improvement" is as used in Treas. Reg. [Section] 1.174-2(a)(l) and incorporated under 26 U.S.C. Section 41(d)((1)(A)) with respect to that business component or components before QHI and/or its subsidiaries or affiliated entities performed the work for which QHI reported or claimed a credit under 26 U.S.C. Section 41 for 2009 and/or 2010.  Please provide your responses separately for 2009 and for 2010.

(Doc. #43-5, *PageID* #s 1187-88).

Plaintiff contends that identification of the business components and uncertainties will substantially clarify and narrow the scope of discovery.  For example, it is not clear

---

[9] At one point, Defendants indicate that they have produced over 343,000 pages.  (Doc. #54, *PageID* #1519).

[10] Interrogatories 11 and 12 request the same information with a few minor changes.

if QUI is claiming more than one business component for each job, or whether QUI is

claiming the entire installation as a business component.  (Doc. #43, *PageID* #1098.

"The United States cannot evaluate Defendants' project documents or determine which

witnesses to depose without knowing what it is about each of the sample projects that

Defendants claim qualifies for the R&D tax credit."  *Id.* at 1099.

In response, "Defendants object to the request as calling for legal opinions

and conclusions."  *Id.* at 1188.  However, they add,

> For the identified projects in the Discovery Order, the
> business components are the electrical designs and/or
> electrical system installation process.  Specific project scope
> and electrical design product description have been produced
> in the contract terms.
>
> For the qualified projects the uncertainties in the development
> and/or improvement of the business component involved the
> following: 1) uncertainty at the outset as to how the
> development new business component and/or improvement
> would be accomplished; and 2) uncertainty if the requested
> business component could developed as required; and 3)
> uncertainty as to the final appropriate design.  Specific
> uncertainties are identified in, but no[t] limited to[,] the
> project documents produced by QHI.

(Doc. #43-5, *PageID* #1188).[11]

Defendants assert that Plaintiff "fails to understand the nature of QUI's work and

how it is incorporated into a larger building system."  (Doc. #50, *PageID* #1415).

Specifically, "the electrical system design and installation performed by QUI is a

component which is integrated into the entire building complex and cannot be isolated

---

[11] Defendants object to interrogatory 12 for the same reasons, but add that Interrogatory 12 is redundant,
as Interrogatory 11 requests the same information. (Doc. #43-5, *PageID* #1189).

from each building system." *Id.* (citing *Trinity Indus., Inc. v. United States*, No. 3:06-cv-726 (N.D. Tex. May 11, 2012)).[12]

Defendants contend QUI's system is similar to the beverage delivery system in *Trinity Industries.* In the case, the court evaluated whether the costs of two projects were "incurred in a process of experimentation and qualified research." (Doc. #50-8, *PageID* #1498). The court breaks the first project into seven primary issues and the beverage system is one such issue. The court explains that the beverage distribution system required tubes running throughout the vessel, but the tubes penetrated fire boundaries, and the Coast Guard-approved metal connectors made drinks taste bad. The court found that "designing a penetration technique that did not impair beverage quality required a process of experimentation." *Id.* at 1497.

Defendants' reliance on *Trinity Industries* is misplaced. The court's analysis in that case illustrates how important specific details about each project can be. Further, the order establishes that complicated projects can be broken down into separate issues to determine whether the taxpayer engaged in qualified research for each one. It also emphasizes the importance of identifying business components and uncertainties. The four tests to determine if research is qualified under 26 U.S.C. § 41 must be applied to each business component, and thus, the tests cannot be applied until the business components are identified. *Suder,* 2014 WL 4920724, at *14.

---

[12] Defendants' attached the district court's order in *Trinity Industries* to their Response in Opposition as an exhibit (Doc. #50-8).

Defendants may be correct that Plaintiff does not understand "the nature of QUI's work." Perhaps for that reason, Plaintiff requested that Defendants identify the business components and uncertainties for each project. Given Defendants' inherent understanding of their own projects and Plaintiff's reasonable lack thereof, the burden on Defendants to identify specific aspects of the projects does not outweigh the benefits of the requested information.

Defendants' objection on the ground that Interrogatory 11 calls for a legal opinion and conclusion lacks merit. "[A]n interrogatory is not objectionable merely because it calls for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33, 1970 advisory committee's note, subdivision (b). The Interrogatory asks Defendant to apply the definitions to the facts of the identified projects. Interestingly, Defendants provide the same definition for business component in their First and Second Set of Interrogatories and their Requests for Production of Documents. (Doc. #40-1, *PageID* 888; Doc. #40-2, *PageID* #931; Doc. #33-1, *PageID* #415).

For these reasons, Plaintiff's Motion to Compel a responses to Interrogatory 11 is granted. Defendants must specifically identify the business components and uncertainties for each of the twelve sample projects.

## 2. Information About Employees Who Allegedly Engaged in Qualified Research

Plaintiff next contends that Defendants should be compelled to provide information about QUI employees in response to Interrogatories 1, 2, and 5 and Production Requests 19 and 20. (Doc. #43, *PageID* #1100). Plaintiff's Interrogatory

1 asks Defendants to identify "all persons with knowledge of facts relevant to
whether the Defendants . . . are entitled to the credits . . . and/or the deductions . . .
that are at issue in this case . . . ." (Doc. #43-5, *PageID* #1177). In addition to
identifying the names, addresses, and telephone numbers, Plaintiff asks Defendants
to "provide in detail the facts of which they have knowledge, and describe the job or
position in which they obtained such knowledge." *Id.*

In Interrogatory 2, Plaintiff seeks additional information for "all employees of
QHI . . . who performed some of the work with respect to which you and QHI claim
that QHI incurred expenses for which QHI reported or claimed credits under 26
U.S.C. Section 41 that flowed through to you in 2009 and 2010 . . . ." *Id.* at 1179.[13]
In addition to asking for basic identification information, it asks Defendants to:

> [P]rovide their job title, job description, wages/salary, the
> hours they worked, the name and address of the project(s)
> upon which they worked those hours, and a detailed
> description of the specific work they performed for each
> pay period in 2009 and in 2010 for the portion of the
> overall wages that they received that was paid for the work
> they performed for which QHI reported or claimed credits
> under 26 U.S.C. Section 41.

*Id.* Plaintiff further asks Defendants to identify "employees whose work and wages
were taken into account in the statistical sampling study and report of Deborah
Goldwasser, PhD, that [a]lliantgroup and/or QHI used to report or claim Section 41
credits for any or all of the years 2008 through 2012." Interrogatory 5 asks for the

---

[13] Plaintiff notes that "Interrogatory 3 seeks similar employee information to Interrogatories 2 and 5, but
for those employees who worked on the projects for which QUI claimed the 179 deductions, and should
be answered for all the same reasons addressed herein." (Doc. #43, *PageID* #1100).

same information as Interrogatory 2, but for "each employee whose wages were incorporated in the Section 41 credits reported or claimed by the Quebes/QHI for 2009 and 2010 . . . ."  *Id.* at 1182-83.

Defendants object to each of the interrogatories to the extent they request information that is protected, confidential, or privileged such as dates of birth and social security numbers.  Further, in response to Interrogatory 1, Defendants object to the request as being vague and ambiguous with respect to what knowledge would be relevant to whether Defendants are entitled to tax credits under section 41 and deductions under section 179D.  *Id.* at 1177.  However, Defendants provide some information (name, job title, method of contact, and summary of knowledge) for eight individuals.  Defendants add,

> For further answer please refer to Exhibit A which provides list of employees and job titles and estimated allocations of percentage of time spent on qualified activities.  Time records for additional employees will be produced for the identified projects.  The time tracking system utilized by QHI does not capture all employee hours who conducted research activities.  Employees not reflected in the time tracking system are identified in response to Interrogatory number 1.

*Id.* at 1177-79.

Defendants object to Interrogatory 2,

> Subject to and without waiving the foregoing objections, as indicated in the materials already provided during examination and in the recent production, time was not tracked for individuals by task and project. The names of the individual employees and their job titles, their gross salaries, percentage allocations of research for 2008 and for 2009, and adjustments made accounting for statistical

> sampling have been provided (Bates # QHI 0178-0188) and are again attached as Ex. A. Additional time records for employees associated with each project will be produced in accordance with the limitation outlined in Interrogatory no 1.  The individuals may be contacted through counsel of record.

*Id.* at 1179-80.  Defendants object to Interrogatory 5 on the same grounds they objected to Interrogatory 2, and they add that Interrogatory 5 is duplicative of Interrogatory 2.  *Id.* at 1183.

Review of Plaintiff's Interrogatory 1 reveals that it is overly broad, as it requests information from "all persons with knowledge of facts relevant to . . ." the present case.  *Id.* at 1177.  Defendants provided a list and also submitted their Identification of Lay Witnesses.  Although neither contains every detail requested by Plaintiff, both provide names, descriptions of their knowledge, and how they can be contacted.  The information Defendants have provided will enable Plaintiff to proceed with depositions.  Therefore, Plaintiff's Motion to Compel a Response to Interrogatory 1 is denied.

Turning to Interrogatory 2, some of the information it seeks is not relevant and discoverable under Rule 26(b)(1).  Specifically, it seeks information about years 2008 through 2012.  However, tax years 2008, 2011, and 2012 are not at issue in the present case and, therefore, the sought-after information for these tax years is not relevant to Plaintiff's claims in this case.  Similarly, because Plaintiff "does not anticipate that expert testimony with regard to sampling will be necessary given the parties' sampling agreement[,]" the sampling information concerning tax years 2009

and 2010 is not relevant to Plaintiff's claims at this time.  (Doc. #36, *PageID* #470, n.9).  Thus, Defendants are not presently required to specifically identify which employees' work and wages were taken into account in the statistical sampling study and report of Deborah Goldwasser.

Additionally, birthdates and social security numbers are highly sensitive, personal, and confidential.  At this time, Defendants are not required to provide either to Plaintiff.  Defendants are, however, required to respond to the remainder of Plaintiff's Interrogatories 2 and 5.  Defendants must provide Plaintiff all such information so that Plaintiff can contact the individuals through counsel of record.  Although this Court does not have access to all the records produced by Defendant, it does not appear, based on the current record, that Defendants have sufficiently answered Plaintiff's interrogatories relating to QUI's employees.

Defendants disagree, contending, "[t]he qualification of wages and final credit calculation appearing on the amended tax returns for tax years 2009 and 2010 was determined by a Court approved method outlined in *Suder* . . . ."  (Doc. #50, *PageID* #1418); *see Suder,* 2014 WL 4920724.  In *Suder,* the taxpayer's senior vice president of product operations (2004-2006)/senior vice president of product development (2007) determined the percentage allocations for each employee.  2014 WL 4920724, at *10.  He testified for four days about his allocations and introduced a diagram containing the employees for which they claimed wage QREs, the employees' department or area, and the percentage allocations.  *Id.* at *22.  He "identified the employees on the diagram, described their roles and responsibilities, and explained

how he determined their percentage allocations." *Id.*  The court found him to be a "highly credible and reliable witness." *Id.*  Based on his credible testimony, the credible testimony of the taxpayer's and IRS's other witnesses, and the documentary evidence, the court found the wage allocations to be a reasonable estimate of the percentages of time the taxpayers' employees spent performing qualified services. *Id.* at *24.

At this point, it is premature for Defendants to rely on *Suder,* as the proper method of substantiating QREs is not yet before the Court.  However, notably, Defendants have not provided the information identified in *Suder.*  For example, Defendants have not described the roles and responsibilities of each employee.

According to Defendants, "Mr. Ross reviewed the duties of each employee and estimated the amount of time each employee was engaged in qualified research." (Doc. #50, *PageID* #1418).  It is not clear how Mr. Ross could review the duties of each employee if those details are not available.  Additionally, alliantgroup's study indicates that they interviewed three employees of QUI "to identify *specific activities undertaken* on the identified projects during the Study Period and the associated documentation available."  (Doc. #22-1, *PageID* #150) (emphasis added).  Thus, Defendants must identify which projects each employee worked on and what their jobs entailed.

Defendants note, "It is important to remember that the Defendants are the individual shareholders of QUI with limited personal knowledge of the business and research credit.  The Defendants' discovery responses are contingent on QUI's

document responses to its subpoena." (Doc. #50, PageID #1413). However, this conflicts with their previous statement that "Defendant Dennis Quebe is the sole shareholder in [QUI]." *Id.* at 1406. It is reasonable to believe that as the sole shareholder, he has personal knowledge of QUI. This is further illustrated by alliantgroup's R&D Tax Credit Study that notes, "In order to calculate wage expenses, Dennis Quebe, Owner of [QUI] provided alliantgroup with information regarding the amount of time each employee spent during tax years 2008 through 2011 on the activities discussed within this report." (Doc. #22-1, *PageID* #150). Although Linda Quebe may have limited personal knowledge, it appears that Dennis Quebe is well-suited to respond to Plaintiff's requests.

To the extent that Plaintiff is requesting information about employees who did not perform *any* qualified activities, Defendants need not produce information relating to those employees' activities. However, if an employee performed both qualified and not-qualified activities, information concerning both is relevant and therefore discoverable under Rule 26(b)(1). It is difficult to estimate what percentage of an employee's work is qualified if only one part of the employee's work is provided. To the extent that these interrogatories request the same information, Defendants need only respond with the requested information once.

### 3.    Third-Party Witness Information

Plaintiff asserts that Defendants should be compelled to provide information about key third-party witnesses in response to Interrogatories 6-10 and 13-14. (Doc. #43, *Page ID* #1103). In Interrogatories 6 and 7, Plaintiff requests the identities of and contact

49

information for the officers, construction supervisors, and foremen of the contractors and customers for whom QHI performed work, and Interrogatory 8 asks for the same information for each building inspector.  (Doc. #43-5, *PageID* #s 1183-85). Interrogatories 9 and 10 request Defendants identify each architect, engineer, and/or other persons who created the designs, blueprints, drawings, and/or specifications for the work performed by QHI and identify the designs, blueprints, sketches, drawings, and specifications.  *Id.* at 1186-87.  In Interrogatory 13, Plaintiff asks Defendants to identify each contractor or customer that provided any progress payments for the work for which Defendants and QHI reported or claimed the Section 41 credits and the person who approved each progress payment.  *Id.* at 1189-90.  Interrogatory 14 asks Defendants to "identify any documents showing or evidencing the date and amount of the payments and describe and identify any documents describing the work for which each payment was provided and the percentage of the overall work completed for which the payment was provided."  *Id.* at 1190.

Defendants object to each of these on the grounds that they are "overly broad, unduly burdensome and because it is requested for the purpose of harassment."  *Id.* at 1183-90.  Defendants further object to Interrogatories 6-8 and 13-14 on the grounds that the "minimal relevant value of the evidence sought is outweighed by the expense, disruption and prejudice that will be caused to Defendants by harassment of clients."[14] *Id.* at 1183-86, 1189-91.  Finally, Defendants contend that QUI, alliantgroup, and

---

[14] Defendants' objections to Interrogatory 14 do not include "by harassment of clients."

Defendants produced the requested information in the contract and project documents.

*Id.* at 1184-91.

Under Fed. R. Civ. P. 33(d), parties are permitted to provide documents

responsive to interrogatory requests:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

Although the answers to Plaintiff's Interrogatories may be determined by

examining business records, the burden is not the same for either party.  As of December

2, 2016, Defendants produced 343,000 pages of documents.  According to Defendants,

"[t]he documents are produced by project in specific folders which allows for ease in

comprehension."  (Doc. #50, *PageID* #1421).  However, it is difficult to imagine the

number of folders that would be necessary to allow ease in comprehension or to

significantly reduce the high burden imposed upon Plaintiff by this large number of

documents or folders.[15]

---

[15] Defendants have not indicated the total number of folders but it is reasonable to infer that it is a large number, given the production of 343,000 documents.

In addition, although alliantgroup did not review all of the twelve projects chosen for this case, there is at least some overlap between these projects and their sample. (Doc. #22-1, *PageID* #134).  Their study indicates that "Quebe employees provided examples of the following contemporaneous documentation associated with the aforementioned projects:  Design drawings with comments; Building information modeling; Specifications; Requests for information; Change orders; Sketches; Meeting notes, and Email correspondence."  *Id.* at 150.  If these documents were already identified for alliantgroup, it will not be overly burdensome for Defendants to identify them again.

Further, Defendant Dennis Quebe is the sole shareholder of QUI and is therefore more familiar with the documents than Plaintiff.  According to alliantgroup's R&D Tax Credit Study, Mr. Quebe was able to "provide[] alliantgroup with information regarding the amount of time each employee spent during tax years 2008 through 2011."  (Doc. #22-1, *PageID* #150).  This suggests that he is very familiar with the projects completed by QUI.

Finally, earlier in discovery, Defendants sought to reduce the total number of projects to focus on, in part, because they asserted they would need to review the documents before producing them to Plaintiff.  As a result, Defendants should be much more familiar with the documents than Plaintiff.

Defendants contend, "As in *Wilkinson v. Greater Dayton Regional Transit Authority,* No. 3:11-cv-247, 2012 WL 3527871 (S.D. Ohio Aug. 14, 2012), documents produced in accordance with Rule 33 satisfy the rules of discovery."  (Doc. #50, *PageID* #1420).  However, unlike the interrogatories in *Wilkinson,* Plaintiff's Interrogatories 6-8

are not overly broad or unduly burdensome when applied to the twelve projects at issue.

Each asks Defendants to provide information about specific individuals associated with

the projects.  These should not be difficult for Defendants to identify.  Therefore,

Defendants must respond to Interrogatories 6-8.

Turning to Interrogatories 10 and 14, Plaintiff asks Defendants to identify

documents.  Therefore, Defendants must answer by identifying responsive documents in

sufficient detail to enable Plaintiff to locate and identify them as readily as Defendants

could.  Fed. R. Civ. P. 33(d).  The fact that the documents are organized in folders,

although helpful, does not excuse Defendants from Rule 33(d)'s requirement.  The

information Plaintiff requests in Interrogatory 9 should be included in the documents

identified in 10.  To the extent that it is not, Defendants are required to answer

Interrogatory 9.  Similarly, the information Plaintiff requests in Interrogatory 13 should

be included in the documents identified in 14.  To the extent that it is not, Defendants

required to answer Interrogatory 13.

### 4.    Defendants' General Objections

Defendants also "incorporate [eleven] General Objections in each response to the

individually numbered interrogatories as if they were stated in each response."  (Doc.

#43-2, *PageID* #1126-28).

As explained by Defendants in their Motion(s) to Compel, "objections to

interrogatories must be specific and supported by [a] detailed explanation of why the

interrogatories are objectionable."  (Doc. #40, *PageID* #876) (citing *Burnes v. Imagine*

*Films Entm't, Inc.,* 164 F.R.D. 589, 593 (W.D.N.Y. 1996)) (internal quotation marks

omitted).  Defendants' general objections do not meet these criteria and, therefore, will not be considered by this Court.

### D.    Plaintiff's Motion to Quash the Depositions of Rebecca McGraw and Wayde Smith

Plaintiff moves the Court for an order quashing the depositions of IRS employees Rebecca McGraw and Wayde Smith, both of whom "worked on or had some connection with the IRS examination of Defendants' claim for refund."  (Doc. #49, *PageID* #1403).  Plaintiff asserts that their depositions present the same issues that are raised by Defendants' Motion to Compel Responses to Requests for Production.  *Id.*

Defendants contend that both McGraw and Smith are "highly relevant and necessary to ascertain and resolve material facts at issue (i.e., what is the factual basis for the Government to initiate this suit?)."  (Doc. #54, *PageID* #1520).

The deposition of McGraw presents new issues not addressed in Defendants' first Motion to Compel.  Most notably, Plaintiff lists her in its Rule 26(a) disclosures as an individual likely to have discoverable information.  (Doc. #33-13, *PageID* #538-40).  Plaintiff notes that "[s]he has knowledge of discoverable information on some of the claims made in the complaint."  *Id.*  Thus, it is difficult to see how Plaintiff could now establish that her deposition is not relevant to the present case.  As a result, Plaintiff's Motion to Quash the Deposition of Rebecca McGraw is denied.

The deposition of Wayde Smith presents similar issues, as Smith is one of the employees that Defendants sought documents from and about.  In addition, both McGraw and Smith worked on the examination of Defendants' taxes.  However, a key difference

54

between them exists: Smith was only involved as a consultant, and McGraw engaged in independent fact finding.  For example, McGraw conducted an initial interview and regularly contacted QUI's representative.  (Doc. #54-3).  In comparison, Smith did not communicate with QUI's representative, was limited to reviewing documents, and did not conduct any independent fact finding.  *Id.*  Given Smith's limited involvement, information about him is not relevant.  For this reason and the reasons discussed above, Plaintiff's Motion to Quash the Deposition of Wayde Smith is granted.  *See Nordberg,* 1996 WL 170119, at *2 ("Information about people who participated in the audit are not relevant, nor are notes made by IRS employees during the audit."); *Mayes,* 1986 WL 10093, at *3 ("IRS employee's legal analysis is not relevant to any of the issues herein and is thus outside the scope of discovery.").

## VI.  **CONCLUSION**

In this incredibly contentious case, counsel for both parties "should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests."  *Cable & Computer Tech.,* 175 F.R.D. 646, 652 (citations and internal quotations marks omitted).

### **IT IS THEREFORE ORDERED THAT**:

1. Defendants' Motion to Compel Responses to Requests for Production (Doc. #32) is DENIED, in part, and GRANTED, in part, as described above;

2. Defendants' Motion to Compel Reponses to Interrogatories and Identification of Lay Witnesses (Doc. #39) is GRANTED, in part, and DENIED, in part, as described above;

3.  Plaintiff's Motion to Compel Responses to Interrogatories (Doc. #42) is GRANTED, in part, and DENIED, in part, as described above;

4.  Defendants' Motion to Quash the Depositions of Kenneth Lowery and Lance Beck and Motion for Protection (Doc. #47) is DENIED as moot; and

5.  Plaintiff's Motion to Quash the Depositions of IRS Employees or, in the Alternative, for a Protective Order (Doc. #49) is GRANTED, in part, as to the Deposition of Wayde Smith, and DENIED, in part, as to the Deposition of Rebecca McGraw.

January 23, 2017                              *s/Sharon L. Ovington*
                                              Sharon L. Ovington
                                              United States Magistrate Judge