# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cv-294 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| DENNIS QUEBE, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

# DECISION AND ENTRY

## I. INTRODUCTION

Believing that Defendants failed to adequately respond to its interrogatories, Plaintiff first moved to compel their responses in June 2016. (Doc. #s 22-23). The parties subsequently agreed to narrow the scope of discovery, and the Court denied Plaintiff's motion without prejudice to renewal. (Doc. #30). Regrettably, this temporary truce between the parties quickly deteriorated, hope for cooperative discovery dissolved, and Plaintiff renewed its Motion to Compel. (Doc. #42).

In January 2017, the Court partially granted and partially denied Plaintiff's Motion to Compel. (Doc. #59). Doing so, the Court ordered (in part) Defendants to provide additional responses to Plaintiff's Interrogatories 2 and 11. Defendants' additional responses to these Interrogatories are presently at issue by way of Plaintiff's Motion for Sanctions under Rule 37(b) (Doc. #61), Defendants' Memorandum in Opposition (Doc.

#62), Plaintiff's Reply (Doc. #64), Defendants' Sur-Reply (Doc. #65), and Plaintiff's

Brief in Response (Doc. #66).  The Court also views the parties' arguments in light of the

record as a whole.

This Decision and Entry incorporates by reference the background and substantive

law surrounding the research tax credit set forth in the previously filed Decision and

Entry.  (Doc. #59).

## II.    DISCUSSION

Plaintiff contends that sanctions are warranted against Defendants due to their

failure to sufficiently answer Interrogatories 2 and 11 and due to their failure to comply

with the Court's Order.  Plaintiff's requested sanctions include either default judgment

against Defendants or an order barring Defendants from presenting evidence or

contentions absent from their answers to these Interrogatories.

Defendants assert that they have, to the best of their ability, answered Plaintiff's

discovery requests and complied with the Court's Order.  Additionally, they argue,

"Plaintiff's requested sanctions are extreme and unwarranted."  (Doc. #62, *PageID*

#1837).

Before addressing sanctions, the Court must first determine whether Defendants

complied with the Order docketed on January 23, 2017.  (Doc. #59).

### A.    <u>Plaintiff's Interrogatory 2</u>

Plaintiff seeks details about the foundation of Defendants' assertion that they are

entitled to the research tax credit.  This is seen in Interrogatory 2's request for, among

other information, "a detailed description of the specific work [the identified employees]

performed … for which QHI reported or claimed [research tax] credits ….” (Doc. #61-2, *PageID* #1750).

The Court’s Order examined Defendants’ answer to Interrogatory 2 and determined that they did not need to provide certain information (birthdates, Social Security numbers, etc.) to Plaintiff. The Order then required Defendants to “identify which project each employee worked on and what their jobs entailed.” (Doc. #59, *PageID* #1710).

Plaintiff contends that Defendants failed to adequately respond to Interrogatory 2 and failed to comply with the Court’s Order by simply reformatting material they previously had provided. Plaintiff is correct.

Defendants responded to the Court’s Order by adding information and providing a table in their answer to Plaintiff’s Interrogatory 2. (Doc. #61-2, *PageID* #s 1750-55). However, the Defendants’ answer falls far short of providing the information the Court’s Order required and fails to constitute a good-faith effort to either comply with the Court’s Order or respond to Plaintiff’s Interrogatory 2. Defendants’ table contains employees’ names and job titles, general descriptions of their work, and their 2009 and 2010 allocation wages. *Id.* at 1751-55. Representative samples show the following:

| Employee Name | Company | 2009 Allocation Wages | 2010 Allocation Wages |
|---|---|---|---|
| **Apprentice--** James E. Meyers II directly supported the implementation and testing of electrical systems, providing feedback on testing results and coordination challenges to Foremen and Project Managers for analysis and reevaluation. | | | |
| James E. Meyers II | Chapel | - | 50% $5712 |
| **CAD Operator--** Zachary Davis drafted alternative conduit and wire routes and layouts for analysis by Project Managers and Estimators. Mr. Davis aided the evaluation and selection of different route and equipment alternatives, providing documentation of each alternative's advantages and disadvantages. | | | |
| Zachary Davis | Chapel | - | 100% $19,205 |

\* \* \*

| Project Managers-- The Project Managers utilized their construction expertise to develop constructability analyses and value engineering solutions before and during the construction of designs. Furthermore, the Project Managers were the on-site representative of the Company during construction addressing immediate uncertainties encountered during implementation and coordination between electrical and other trades. For example, these individuals evaluated design plans in terms of functionality and construction feasibility while considering the intended project purpose and potential restrictions. | | | |
|---|---|---|---|
| L Robert Shaffer | Chapel | 30% $124,274 | 30% $109,838 |
| William T. Wood | Chapel | 100% $68,282 | 100% $68,427 |
| Stanley T. Arnold, Jr. | Chapel | 30% $81,397 | 30% $72,828 |
| Robert A. Galpin | Chapel | 35% $99,378 | 35% $86,166 |
| Jeffrey L. Carr | Chapel | 20% $69,451 | 20% $63,560 |
| Gene O. Speight | Chapel | 100% $85,501 | 25% $111,236 |
| Steven F. Hurst | Chapel | 100% $65,824 | - |

*Id.* at 1751, 1754.

The bare-bone, generalized information Defendants provided in their answer and table does not specifically describe the alleged research that was performed by each identified employee. Instead, Defendants have, as Plaintiff accurately describes, "recycled generic title descriptions from the [a]lliantgroup study—descriptions that the Court has already ruled insufficient." (Doc. #61, *PageID* #1724). Defendants' generic descriptions, moreover, read more like advertisements for job openings. The descriptions

alert the reader to work performed—Project Managers, for instance, "utilized their construction expertise to develop constructability analyses and value engineering solutions …." *id*. at 1754—but shed no light on the specific work the employee did "for which QHI reported or claimed [research tax] credits under 26 U.S.C. [§] 641." *Id*. at 1750.

Defendants contend that "interrogatories are an inappropriate vehicle to explain hundreds of thousands of pages of information, describe weeks and months worth of work, and dissect complicated designs." (Doc. #62, *PageID* #1837). They maintain that they "have complied with the discovery requests and with the discovery order to the best of their ability." *Id*. In addition to providing a table, they allege that they have produced contemporaneous business records that substantiate their interrogatory responses. *Id.* at 1848. Specifically, "All the project documents produced (QHI 001-QHI 345417) directly tie to employee activities." (Doc. #62-38, *PageID* #4060). Note well that this refers to Defendants' production of over 340,000 pages of documents.

Defendants advanced this same line of argument in response to Plaintiff's Motion to Compel. It lacked merit then and does so now. Defendants have repeatedly relied on their production of over 340,000 pages to Plaintiff in this case. *See* Doc. #62, *PageID* #1837; Doc. #62-1, *PageID* #1856; Doc. #62-38, *PageID* #4060. Perhaps Defendants have been seduced by the magnitude of their own document production. Perhaps they are attempting to camouflage behind their document dump a barren evidentiary landscape—one bereft of pertinent, responsive evidence. Whatever their reasons for insisting their production of over 340,000 pages is sufficient, their document dump does not help them

today anymore than it did yesterday.  *See Scott Hutchison Enter., Inc. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 54 (S.D.W. Va. 2016) ("The term 'document dump' is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests.") (citation omitted); *cf. Stooksbury v. Ross*, 528 F. App'x 547, 550 (6th Cir. 2013) ("near 40,000-page discovery submission … was merely a document dump of mostly unresponsive information ….").

Accordingly, Plaintiff's contentions regarding Defendants' failure to comply with the Court's Order and failure to sufficiently answer Interrogatory 2 are well taken.

### B.    Plaintiff's Interrogatory 11

Plaintiff's Interrogatory 11 asks that, for each of the twelve sample projects, Defendants, "identify the business component(s) … involved in it, state with specificity what uncertainty concerning the development or improvement of the business component(s) existed …."  (Doc. #43-5, *PageID* #s 1187-88).  When granting Plaintiff's Motion to Compel additional responses to Interrogatory 11, the Court mandated, "Defendants must specifically identify the business components and uncertainties for each of the twelve sample projects."  (Doc. #59, *PageID* #1705).

In response, Defendants listed each project separately but provided little, if any, additional information concerning the business components of each project.  They described, for example, the business components involved in the 2009 Middletown Hospital as follows:

> The new or improved business components are the improved electrical design and new process of incorporating the electrical design into the new construction of the Middletown Hospital project as described in the contract and scope of work.

(Doc. #61-2, *PageID* #s 1175). Remarkably, the new and improved business components are the same for each project—"the improved electrical design and new process of incorporating the electrical design into the new … as described in the contract work and scope"—with changes only to identifiers (project names, goals, and locations). *Id.* at 1175-81. Such generalized uniformity failed to sufficiently answer Interrogatory 11 and failed to follow this Court's order to "specifically identify the business components ... for each of the twelve sample projects." (Doc. #59, *PageID* #1705).

To their credit, Defendants identified some uncertainties for each projects. Again, for example, for the 2009 Middletown Hospital project, Defendants wrote:

> Uncertainties faced by QHI in accomplishing the business components include, but is [sic] not limited to,
>
> - the final appropriate electrical design of the Project,
> - the best methodology for the electrical distribution system,
> - the best methodology to facilitate conduction,
> - the best methodology to facilitate the proton accelerator,
> - the best methodology to distribute voltage/current from the generator, and
> - the most efficient process for installing the electrical system.

(Doc. #61-2, *PageID* #s 1175-76).

Defendants' use of the phrase "include, but is not limited to …" points to future information that they might provide to Plaintiff about additional uncertainties inherent in

each project. This hints, somewhat oddly, that Defendants are presently uncertain about all their uncertainties. Whatever this may say about the strength or weakness of their justifications for asserting the research tax credit, their open-ended answer to Interrogatory 11 is insufficient and fails to comply with the Court's Order. (Doc. #59, *PageID* #1705) ("Defendants must specifically identify the business components and uncertainties for each of the twelve sample projects."); *see JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, No. 2:06cv00095, 2006 WL 3803152, at *5 (S.D. Ohio Nov. 14, 2006) ("Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. Gamesmanship to evade answering as required, is not allowed. If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information.") (internal citations and quotation marks omitted).

Defendants also often speak vaguely or generally about uncertainties, characterizing them, for example, as "the final appropriate electrical design of the Project"; "the optimum design and procedure to incorporate multiple systems in the building"; "how to incorporate different systems from different manufacturers developed at different times into a functioning landscape"; "the best plan for pathway distribution"; or "design of an electrical system that accounted for future expansion of the facility." (Doc. #61-2, *PageID* #s 1775-77). When Defendants are more specific—such as their reference to a "methodology to implement system to disrupt the emulsification of gel fuel," *id*. at 1781—they fail to connect these uncertainties (or, for that matter, their vague

or general uncertainties) to the business component they sought to develop or improve to resolve the uncertainties they faced. *See* 26 U.S.C. § 41(d)(1)(A).

Accordingly, Plaintiff's contentions regarding Defendants' failure to comply with the Court's Order and failure to sufficiently answer Interrogatory 11 are well taken.

## C. __Federal Rule of Civil Procedure 33(b)__

Defendants' answers to Interrogatories 2 and 11 remain insufficient because they contain an additional deleterious feature: They begin with the caveat of "[u]pon information and belief …." (Doc. #61-2, *PageID* #s 1750, 1775). This wishy-washy phrase adds doubt, if not genuine mystery, to the accuracy of the information that follows. And, this phrase reinforces the open-ended nature of Defendants' answers, thus causing Plaintiff prejudice.

Still, Defendants might be attempting to correct or minimize any problem with their answering "[u]pon information and belief." At the end of their Second Amended Answers, Defendant Dennis Quebe indicates that the responses "were prepared by the counsel of record based on information provided by [QHI]." *Id.* at 1788. He also certified pursuant to Federal Rule of Civil Procedure 33 that he "reviewed the responses and the facts are true and correct to the best of [his] knowledge, information, and belief …." *Id.* Defendants' attorney, Jefferson Read, declares pursuant to Federal Rule of Civil Procedure 33 that he "reviewed the responses and the legal conclusions and objections are true and correct to the best of [his] knowledge, information, and belief …." *Id.* at 1788.

Plaintiff correctly contends that Defendants have failed to verify their responses as Rule 33(b) requires.  Rule 33(b)(1) states, "interrogatories must be answered: (A) by the party to whom they are directed; or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party."  Further, "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.  Fed. R. Civ. P. 33(b)(3).  "The person who makes the answers must also sign them, and the attorney who objects must sign any objections."  Fed. R. Civ. P. 33(b)(5); *see Hollingsworth v. Daley*, No. 2:15-CV-36, 2016 WL 2354797, at *1 (E.D. Ky. Mar. 21, 2016) ("Under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney.") (quoting *Villareal v. El Chile, Inc.,* 266 F.R.D. 207, 211 (N.D. Ill. 2010)) (internal quotation marks omitted).

The plain language of Rule 33(b) thus requires Defendant Dennis Quebe—not his attorney—to answer Plaintiff's Interrogatories.  Although attorneys, as a practical matter, very likely assist their clients when answering Interrogatories, *see In re Asbestos Prods. Liab. Litig. (No. VI),* No. 08- 90234, 2012 WL 5839023 (E.D. Pa. Nov. 16, 2012), Rule 33(b)(3) required Mr. Quebe to answer each interrogatory separately, fully, and under oath.  Defendants' attorney was required to verify and sign any objections after a reasonable investigation.  *See Washington v. City of Detroit*, No. 05-CV-72433, 2007 WL 603379, at *2 (E.D. Mich. Feb. 22, 2007) ("'[t]he signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and

belief, formed after a reasonable inquiry, the disclosure is complete and correct, as of the time it is made.'" (quoting Fed. R. Civ. P. 26(g)(1)); *see also Watson v. Dillon Cos.,* No. 08-cv-91, 2008 WL 5104783, at *6 (D. Colo. Dec. 2, 2008) (and cases cited therein). Instead of complying with these requirements, Mr. Quebe verified "only the facts set forth above" and his attorney verified (in part) "the legal conclusions." Defendants' answers do not provide any insight into how Defendants delineated between facts and legal conclusions or what portion of Mr. Quebe's answer contained facts and what constituted counsel's legal conclusions.

Defendants' failure to comply with Rule 33 negates the focus that properly formulated interrogatory answers and verifications bring to discovery, thus defeating the utility of interrogatories.

> Seeking information through Interrogatories is an efficient and cost-effective method of discovery and marshaling evidence for trial. Indeed, the Rules anticipate that it could lead to the discovery of evidence worthy of admission at trial. Rule 33(c) provides that Interrogatory answers may be used at trial "to the extent permitted by the rules of evidence." *Deviating from the course prescribed by the Rules in any significant manner or way therefore negates the significant opportunity to introduce evidence through Interrogatories at trial.*

*Saria v. Mass. Mut. Life Ins. Co.,* 228 F.R.D. 536, 538 (S.D.W. Va. 2005) (emphasis in original) (quoting *Vica Coal Co. v. Crosby,* 212 F.R.D. 498, 505 (S.D.W. Va. 2003)).

The ramifications ensuing from Mr. Quebe's and counsel's inadequate verifications are significant. "[I]nterrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of

a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory." *Melius v. Nat'l Indian Gaming Comm'n*, CIV A 98-2210, 2000 WL 1174994, at *1 (D.D.C. July 21, 2000)) (citations omitted); *see Saria,* 228 F.R.D. at 538-39 ("If interrogatory responses may be used at trial, they are nothing short of testimony. When responses are only signed by an attorney, and not by the client, the attorney has effectively been made a witness. Likewise, the failure to provide client verification undermines the dispositive motion process under Rule 56(c) ...."). The verifications attached to Defendants' answers essentially disclaim that they are factual admissions because they claim to be, at least in part, counsel's statements. Plaintiff, moreover, is correct that its counsel will be unable to depose Mr. Quebe about portions of the answers that he did not provide. And, if Mr. Quebe cannot be deposed about those portions of his answers, Defendants' Interrogatory responses and verifications would frustrate the truth-seeking function of discovery and prejudice Plaintiff due to the limited number of depositions its counsel may conduct.

Accordingly, Plaintiff's challenges to the verifications attached to Defendants' Interrogatory answers are well taken.

**D.    <u>Sanctions</u>**

Plaintiff contends that sanctions are warranted under Rule 37(b) because Defendants willfully refused to comply with this Court's Order. (Doc. #61). Plaintiff asks the Court to "strike the portion of Defendants' answer that relates to the research credit, resulting in a default judgment against Defendants on this issue; or, in the

alternative, enter an order barring Defendants from introducing any evidence or contentions that were not included in their interrogatory responses." *Id.* at 1721.

Defendants assert, "It is disingenuous for Plaintiff to seek death penalty sanctions for Defendant's alleged failure to provide information which is not within Mr. Quebe's personal knowledge …." (Doc. #62, *PageID* #1854). Further, "Plaintiff's requested sanctions are extreme and unwarranted under the facts given Defendants' good-faith effort to comply with discovery requests, continuous production of hundreds of thousands of documents, and attempts to offer multiple witnesses for numerous deposition dates." *Id.* at 1837.

"The Federal Rules of Civil Procedure set forth the discovery obligations of parties and their attorneys, and authorize federal courts to impose sanctions on those who fail to meet these obligations." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500-01 (N.D. Ohio 2013). A party's failure to obey a discovery order is subject to sanction under the plain language of Fed. R. Civ. P. 37(b)(2). Possible sanctions include, at the extreme, dismissal of the action or default judgment. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

Courts consider 4 factors when determining whether to impose dismissal or default judgment:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (internal quotation marks omitted).

The first factor does not favor imposing the most severe sanction on Defendants. Yes, they failed to adequately respond Plaintiff's interrogatories and failed to comply with the Court's Order as discussed above. Yet the record at present does not reveal that Defendants have engaged in contumacious conduct or were perversely or stubbornly resistant to the Court's authority. *See Carpenter v. City of Flint,* 723 F.3d 700, 704-05 (6th Cir. 2013) ("willfulness, bad faith, or fault—requires a clear record of delay or contumacious conduct."; "Contumacious conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient.") (internal quotation marks and citations omitted). Defendants did not completely fail to respond to Plaintiff's discovery requests; their responses to Interrogatories 2 and 11 and to the Court's Order were simply inadequate. *Cf. Harmon v. CSX Transp., Inc*., 110 F.3d 364, 368 (6th Cir. 1997) (much more serious conduct resulting in sanction of dismissal). That said, the ongoing lack of substance in their answers to Interrogatories 2 and 11, and in their response to the Court's Order, warrants sanctions other than default.

The second factor—prejudice—also favors the imposition of sanctions upon Defendants but not default judgment. Plaintiff accurately points out:

> Defendants appear to be running out the discovery clock. So far, this tactic has been successful; over one year of discovery time has passed and the United States is no closer to understanding Defendants' claims to the credit. As Defendants have repeatedly observed, the burden of proof in this matter is on the United States. They appear to believe that if they can filibuster until the close of discovery, they can

> win this case by default. That is precisely the behavior that
> the Federal Rules are designed to prevent. Expert reports are
> due shortly, and less than three months remains in discovery.
> Even should Defendants respond to this motion by providing
> full and complete responses to the interrogatories, the damage
> has been done. The United States' expert has had to prepare a
> report analyzing Defendants' potential research claims
> without being able to respond specifically to what they will
> ultimately allege. In depositions of Defendants' employees
> taken to date, counsel for the United States have had to cast
> around for clues as to what Defendants might claim they were
> researching.

(Doc, #61, *PageID* #s 1735-36).

Defendants' answers to Interrogatory 2 and 11 and their insufficient responses to the Court's Order cause undue prejudice to Plaintiff. Defendants' generic explanations of employees' work activities leave their answer to Interrogatory 2 foggy and unclear. Likewise, Defendants' repetitive descriptions of business components along with their near-complete failure to connect specific descriptions of uncertainties with particular business components leave their answer to Interrogatory 11 insufficient. Their answer frustrates the truth-seeking function of discovery by raising the specter of ever-expanding, ever-transmogrifying discovery. This, in turn, places Plaintiff in the position of wondering—as the close of discovery nears and the dispositive motion deadline and trial date beckon—what will Defendants say next about employees' work activities along with the business components and uncertainties inherent in the 12 projects at issue. This prejudices Plaintiff by forcing them to prepare for a limited number of depositions without essential information. And, if discovery ends without finality in the specific employees' work activities, business components, and uncertainties Defendants must

identify, summary judgment or trial by ambush could well emerge, further prejudicing Plaintiff and further impeding a just, speedy, and inexpensive administration of this case.

Additionally, Plaintiff has been prejudiced by Defendants' production of over 340,000 pages. Indeed, Defendants' production is the epitome of a "document dump" and its attendant ills: misdirection, obfuscation, and delay. *See Scott Hutchison Enter., Inc.,* 318 F.R.D. at 54. ("Such a tactic can bury relevant evidence and force the receiving party to expend considerable time and expenses parsing through documents in order to glean information which may be relevant."). Defendants' continuing reliance on its massive production of documents strives to take advantage (from their perspective) of their document dump.

Defendants assert that "all of the project documents produced (QHI 001 – QHI 345417) directly tie to employee activities." (Doc. #62-28, *PageID* #4060). It is possible that Defendants are correct that all of their documents—well over one-quarter million pages worth—connect to QHI's employees' activities. However, their documents do not all tie to employee activities for the *twelve agreed-upon projects* in this case. For example, Defendants produced QHI 239991-241818 to Plaintiff on October 7, 2016, and attached it as Exhibit 14 to their Opposition to Plaintiff's Motion for Sanctions. Exhibit 14 contains 1,828 pages. (Doc. #s 62-14, 62-15). It includes 862 pages concerning employees who worked in 2009 and 2010, the years at issue in this case. The other 966 pages contain irrelevant information about employees who worked in 2005, 2006, 2007, 2008, 2011, 2012, 2013, and 2014.

Defendants, moreover, responded to the Court's discovery Order by overburdening the record of this case with an unnecessary and grossly excessive number of irrelevant documents. They attached 2,225 pages to their Memorandum in Opposition. As explained above, 966 of those pages have no relevance in the present case. Only 4 of those pages were produced to Plaintiff after the Court's Order. *See* Doc. #62-1, *PageID* #1856; Doc. #62-18, *PageID* #s 3907-10. And, these 4 pages do not contain a detailed description of the specific work the employees performed or the identification of business components and uncertainties, nor do the other documents produced by Defendants that are presently available to the Court.

The third factor—whether the party was warned that failure to cooperate could lead to dismissal and/or default judgment—favors not imposing the extreme sanction of default upon Defendants. Defendants have not yet been warned that they face default judgment. *See Tung-Hsiung Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643 (6th Cir. 2005); *see also Harmon,* 110 F.3d at 367. This Order, however, serves as notice to Defendants that failure to comply with the Court's Order or discovery obligations under the Federal Rules of Civil Procedure could result in the imposition of additional sanctions, including default judgment.

The fourth factor (consideration of less drastic sanctions) favors imposing a sanction on Defendants that is lesser than default because lesser sanctions have not yet been considered or imposed against them. Further, alternative sanctions will protect the integrity of the judicial process. *See Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997) ("[I]n the absence of contumacious conduct, an alternate sanction that would

protect the integrity of pretrial procedures should be utilized rather than dismissal with prejudice.").

As an alternative ground for sanctions, "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. __, 137 S.Ct. 1178, 1186 (2017). The Court's inherent authority supports the imposition of sanctions upon Defendants for their failure to comply with the Court's Order. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *see Metz v. Unizan Bank*, 655 F.3d 485, 490-91 (6th Cir. 2011) (The Sixth Circuit reads "*Chambers* 'broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes[.]'") (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 514 (6th Cir. 2002)).

Plaintiff has, thus far, been unable to obtain all the discoverable information it requires, and it has been forced to waste time and money in pursuit of the requested information. Defendants' failure was not substantially justified and no other circumstances make the imposition of sanctions unjust. Consequently, in an effort to minimize the prejudice and remedy the harm suffered by Plaintiff, Defendants must pay Plaintiff's reasonable fees and expenses caused by their failure to comply with the Court's Order. Plaintiff is directed to file a declaration documenting its reasonable fees and expenses within 5 days of this Order. Defendants may, but are not required to,

respond to Plaintiff's declaration within 5 days after it is filed. Further, Plaintiff may, but is not required to, depose up to 5 additional witnesses. The discovery deadline for *Plaintiff* alone is extended to June 30, 2017. Defendants' discovery deadline remains May 31, 2017. Due to these scheduling changes, the cut-off date for filing summary judgment motions is extended to July 31, 2017.

In the Court's Order, Plaintiff was ordered to respond to Defendants' Interrogatories 1-12, 15-23, and 25 but was permitted to defer its responses until after Defendants complied with the Order. (Doc. #59, *PageID* #1697). Given the Defendants' failure to adequately respond to Plaintiff's interrogatories and the impending discovery end date, Plaintiff is not required to respond further to Defendants' Interrogatories 1-12, 15-23, and 25.

To encourage Defendants' production and identification of relevant evidence, Defendants are barred from introducing any new evidence after the close of discovery. In other words, Defendants must produce all evidence they intend to rely on at trial before June 30, 2017.

As previously ordered, Defendants must respond to Plaintiff's Interrogatories 2 and 11 pursuant to Federal Rules of Civil Procedure 26 and 33. Specifically, Defendants must, for the 12 agreed upon projects, provide a detailed description of the specific work each employee performed for which QHI claimed research tax credits. Additionally, Defendants must specifically identify all of the business components and uncertainties for each of the 12 sample projects. Defendants must provide these responses by May 31, 2017.

Defendants are hereby put on notice that failure to comply with this Order, other discovery orders, or any discovery obligations under the Federal Rules of Civil Procedure could result in the imposition of additional sanctions, including, but not limited to, the entry of default judgment against Defendants.

## III.    CONCLUSION

It bears reiterating:  In this contentious case, counsel for both parties "should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests." *Cable & Computer Tech.,* 175 F.R.D. 646, 652 (citations and internal quotations marks omitted); *see also Saria*, 228 F.R.D. at 539 ("The integrity of the discovery process rests on the faithfulness of parties and counsel to the rules—both the spirit and the letter.  [T]he discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention and … those Rules rely on the honesty and good faith of counsel in dealing with adversaries.") (quoting *Poole v. Textron, Inc.,* 192 F.R.D. 494, 507 (D. Md. 2000)) (citation and internal quotation marks omitted).

**IT IS THEREFORE ORDERED THAT**:

1. Defendants must pay Plaintiff's reasonable fees and expenses caused by their failure to comply with the Court's January 23, 2017 Order.  Plaintiff is directed to file a declaration documenting its reasonable fees and expenses within 5 days of this Order.  Defendants may, but are not required to, respond to Plaintiff's declaration within 5 days after it is filed;

2. Plaintiff's discovery deadline is extended to June 30, 2017;

3. The cut-off date for filing summary judgment motions is extended to July 31, 2017;

4. Plaintiff may, but is not required to, depose up to 5 additional witnesses; and

5. Defendants must respond to Plaintiff's Interrogatories 2 and 11 by May 31, 2017.

Accordingly, Plaintiff's Motion for Sanctions under Rule 37(b) (Doc. #61) is GRANTED, in part, and DENIED, in part.


May 16, 2017 _____           *s/Sharon L. Ovington* _____
                                     Sharon L. Ovington
                                     United States Magistrate Judge