| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cv-294 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| DENNIS F. QUEBE and LINDA G. QUEBE, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANTS' CLAIM FOR
TAX CREDITS UNDER SECTION 41 OF THE INTERNAL REVENUE CODE
(DOC. 76); DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT – R&D TAX CREDIT (DOC. 91); AND DENYING DEFENDANTS'
MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF YVAN J.
BELIVEAU (DOC. 83) AS MOOT**

---

This case is before the Court on the Motion for Summary Judgment on the Issue of

Defendants' Claim for Tax Credits under Section 41 of the Internal Revenue Code (Doc. 76) filed

by Plaintiff United States of America (the "Government") and the Motion for Partial Summary

Judgment – R&D Tax Credit (Doc. 91) filed by Defendants Dennis F. Quebe and Linda G. Quebe

("Defendants"). Both Motions concern Defendants' entitlement to the Research and Development

Tax Credit under Section 41 of the Internal Revenue Code. The Motions are fully briefed (see

Docs. 127, 134, 139, 143) and ripe for review. The Court deems oral argument on the Motions

unnecessary. For the reasons below, the Court **GRANTS** the Government's Motion for Summary

Judgment (Doc. 76) and **DENIES** Defendants' Motion for Summary Judgment (Doc. 91). In

ruling on these Motions, the Court did not need to reach the issue of whether the electrical

contracting work underlying Defendants' claimed tax credits meets the definition of "qualified

research" under Section 41.  Consequently, Defendants' Motion to Exclude the Opinions and Testimony of Yvan J. Beliveau (Doc. 83), whose disputed opinions are relevant only to that determination, is **DENIED** as moot.

## I.    BACKGROUND

### A.  Quebe Holdings, Inc.

Defendants Dennis and Linda Quebe own Quebe Holdings, Inc. ("QHI"), which operates as three separate electrical contracting companies: Chapel Electric ("Chapel"), Romanoff Electric ("Romanoff"), and CRT Technologies ("CRT").  These companies design and develop electrical systems for large commercial complexes.  Their clients include entities such as Wright-Patterson Air Force Base, Dayton Public Schools, Miami Valley Hospital, and Lucas County, among others.

QHI was founded in 2002 and acquired Chapel and Romanoff in that year.  Defendant Dennis Quebe founded CRT the following year.  For purposes of the tax credit at issue, these companies are treated as a single taxpayer.  26 U.S.C. § 41(f).  At all relevant times, Dennis Quebe was the sole shareholder of QHI.  QHI is an S corporation; therefore, Mr. Quebe reported QHI's income on his personal tax return, which he filed jointly with his wife, Defendant Linda Quebe.

### B.  The Tax Credit Study

In September 2012, QHI retained a tax services provider named Alliantgroup, LP ("Alliantgroup") to perform a "Research and Development Tax Credit Study" for tax years 2008 to 2011.  Alliantgroup agreed to be compensated to the extent that it determined QHI was eligible for the research credit, in an amount no greater than 25% of the tax credit ultimately identified.

Alliantgroup's study concluded, in part, that QHI was entitled to claim tax credits for "qualified research expenses" under 26 U.S.C. § 41 for tax years 2009 and 2010.  On April 1, 2013, QHI filed an amended Form 1120S and the Quebes filed an amended tax return (on Form

1040X) for tax year 2009. The Form 1040X reflected a reduction in the Quebes' income tax liability for 2009 in the amount of $107,292.00. The Quebes also filed a Form 1040X for tax year 2008, which reduced the Quebes' income tax liability in the amount of $87,054.00. The reduction in income tax liability for 2008 resulted from the carryback from 2009 of a portion of the claimed Section 41 tax credit. On August 26, 2013, the IRS issued to the Quebes a refund in the amount of $119,954.65, which equaled the amount of the refund claimed by the Quebes on their Form 1040X for 2009 plus statutory overpayment interest.

On December 30, 2013, QHI filed an amended Form 1120S and the Quebes filed a Form 1040X for tax year 2010. The Quebes' Form 1040X reflected a reduction in their income tax liability for 2010 in the amount of $118,048.00. On April 7, 2014, the IRS issued to the Quebes a refund in the amount of $129,482.90, which equaled the amount of the refund claimed by the Quebes on their Form 1040X for 2010 plus statutory overpayment interest.

## C. Procedural Background

On August 25, 2015, the Government brought this action pursuant to 26 U.S.C. § 7405(b) to recover allegedly erroneous refunds of federal taxes paid to Defendants. Specifically, the Government seeks the return of the amounts refunded as a result of the amended tax returns described above. On September 25, 2015, Defendants moved to dismiss the Complaint. On October 15, 2015, the Government filed an Amended Complaint seeking the same relief but containing additional allegations responsive to Defendants' Motion to Dismiss. Defendants filed an Answer, which denied the Amended Complaint's material allegations.

The case proceeded to discovery before Magistrate Judge Sharon Ovington. The parties agreed to narrow discovery to a sample of twelve of QHI's 2009 and 2010 projects for purposes of evaluating the qualified research allegedly conducted in support of QHI's claimed tax credits.

The parties included the six largest projects by payroll and six projects randomly selected by the Court. After the resolution of a dispute concerning Defendants' responses to interrogatories, discovery closed on June 30, 2017.

On July 31, 2017, the parties brought Motions for Summary Judgment directed to specific claims for tax credits and deductions made by Defendants. The Government brought two motions for summary judgment: a Motion for Summary Judgment on the Issue of Defendants' Claim for Tax Credits under Section 41 of the Internal Revenue Code (Doc. 76) (now before the Court) and a Motion for Summary Judgment on the Issue of Defendants' Claim for Tax Deductions under Section 179D of the Internal Revenue Code (Doc. 78). Defendants also brought two motions for summary judgment: a Motion for Partial Summary Judgment regarding §179D Deduction (Doc. 80) and a Motion for Partial Summary Judgment – R&D Tax Credit (Doc. 91) (also now before the Court).

In addition to these Motions for Summary Judgment, the parties brought motions to exclude each other's respective expert's opinions. Defendants filed a Motion to Exclude the Opinions and Testimony of Yvan J. Beliveau (Doc. 83), which focuses on Dr. Beliveau's opinions regarding the nature of QHI's electrical contracting work. Defendants argue that Dr. Beliveau's opinions are irrelevant to the determination of whether QHI conducted "qualified research" under Section 41 because they are based on an incorrect interpretation of that statutory term. The Government filed a Motion to Exclude Testimony of R. Nicholson Worley (Doc. 130). Mr. Worley, an engineer employed by Alliantgroup, offers opinions relating to Defendants' claimed tax deduction under Section 179D of the Internal Revenue Code. Because Mr. Worley's opinion does not relate to Section 41, the Court does not consider the Government's Motion to Exclude his testimony in this Order.

## II.    LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.

*Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A *Wright & Miller, Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id*. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990). Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

In tax cases, like this one, the Government bears the ultimate burden of proving that a tax refund was erroneous, and to what extent. *See United States. v. MacPhail*, 149 F. App'x 449, 453 (6th Cir. 2005). The taxpayer, however, has the burden of showing its right to any claimed tax benefit. *See INDOPCO v. Commissioner*, 503 U.S. 79, 84 (1992). Taxpayers therefore must substantiate their entitlement to a claimed credit and are required to retain the records necessary to do so. 26 U.S.C. § 6001; 26 C.F.R. § 1.6001-1(a), (e). Specifically, a taxpayer claiming the increasing research tax credit "must retain records in sufficiently usable form and detail to substantiate that the expenditures claimed are eligible for the credit." 26 C.F.R. § 1.41-2(d).

## III.  ANALYSIS

The Government makes several arguments for why it is entitled to summary judgment on Defendants claims to the increasing research credit.  The Court addresses only the two of those arguments, which it has determined are meritorious.  The first argument is that QHI's calculation of its base amount under Section 41 is invalid because it was not permitted to use the "start-up" method under 26 U.S.C. § 41(c)(3)(B).  The second argument is that Defendants failed to substantiate their claim for the increasing research credit.  Each of the arguments is an independent ground for granting summary judgment in the Government's favor.  These arguments are also intertwined because, without substantiation or other admissible evidence, there is nothing to rebut the Government's showing that Defendants are not entitled to the tax credit.  The Court therefore discusses the two arguments together below.

### A.  The Section 41 Tax Credit

Congress enacted the research tax credit under 26 U.S.C. § 41 to incentivize American industry to invest in research.  *Fairchild Indus., Inc. v. United States*, 71 F.3d 868, 870-74 (Fed. Cir. 1995).  Under Section 41, a taxpayer may claim a twenty-percent tax credit for the amount of "qualified research expenses" incurred in the performance of "qualified research" that exceed a statutorily defined base amount from an earlier period.  The credit formula therefore rewards taxpayers who increase their spending on research.  The Internal Revenue Code and regulations provide a detailed test for determining whether activities constitute "qualified research"—an issue the parties dispute but the Court does not reach in this Order.

### B.  QHI's Calculation of Its Base Amount

As mentioned, the Section 41 credit is available only for an increase in spending on qualifying research as compared to a "base amount" spent during an earlier period, called the "base

period." The statute permits a taxpayer to use a base period of either 1984-1988 or, if certain criteria are met, an alternative base period intended to make the credit available to "start-up" companies, for example, that were not in business from 1984-88.

To calculate the base amount using the default base period, the taxpayer calculates the percentage of its gross receipts that it spent on research from 1984-1988. 26 U.S.C. § 41(c)(3)(A). The taxpayer then multiplies that percentage, called its "fixed base percentage," by its average annual gross receipts for the four years preceding the year for which it is claiming the tax credit. 26 U.S.C. § 41(c)(1). That number is the "base amount." The base amount represents what the taxpayer would have spent on research if it did not increase its research budget as a percentage of its gross receipts as compared to the base period. The increasing research credit is available only for the excess of the taxpayer's qualified research spending over that base amount. 26 U.S.C. § 41(a)(1).

A taxpayer is permitted to use an alternative base period only if the first taxable year in which it had both gross receipts and qualified research expenses was after 1983, or if there were fewer than three years in which it had both gross receipts and qualified research expenses during the base period of 1984-1988. 26 U.S.C. § 41(c)(3)(B). In this case, QHI used the alternative base period. The Government contends that QHI was not permitted to do so.

The Government argues that QHI had gross receipts and qualified research expenses, both before 1984 and during the 1984-88 period, through its subsidiaries Chapel and Romanoff. The Government makes this argument by citing activities that Defendants claim constituted QHI's qualified research in 2009 and 2010, and then showing that Chapel was engaging in the same activities during the 1980s.

In their interrogatory responses, Defendants contend that the following activities constituted qualified research: developing new means and methods, issuing requests for information (RFIs), implementing change orders, value engineering, determining pathways for conduit and wiring, coordination among trades and estimation. (Doc. 77-12 (Defs. Suppl. Resp. to Interrogs. 1, 2 and 11); *id.* at 14-15 (CAD Operator Brian Coy performed research by determining the appropriate pathways for conduit and wiring); *id.* at 16 (Jeff Serrer performed qualified research by conducting estimation activities); id. at 18-19 (Bob Shaffer and Nick Ames performed qualified research by developing new means and methods on the MVH Heart Tower projects); *id.* at 35 (Sarah Overmyer performed research by providing value engineering studies); *id.* at 36 (QHI resolved uncertainties because "[d]uring the design and installation of the electrical system, several change orders reflect consideration of alternatives by QHI"); *id.* at 40 (Coy's coordination with other trades on Beavercreek Hospital constituted qualified research); *id.* at 43-44 ("QHI improved design of the electrical system through the RFI process").)

Through deposition testimony, the Government shows that Chapel did the same work in the 1980s the Defendants claim to be qualified research in 2009 and 2010. The Government cites testimony from Defendant Dennis Quebe, as corporate representative for QHI, that Chapel resolved uncertainties related to developing means and methods during the 1980s. (Doc. 77-9 (QHI Dep.) Dep. 34:11-14.) Mr. Quebe testified that he did not know whether Chapel performed value engineering in the 1980s, but that he had reason to believe it did. (*Id.* at 37:11-40:1.) Mr. Quebe testified that Chapel determined the routing for conduit and wiring in the 1980s. (*Id.* at 41:1-4.) Mr. Quebe further testified that there was "coordination going on there in the 80s" (*id.* at 36:20-37:9) and that he worked as an estimator in the early 1980s. *Id.* at 28:16-22.

In response, Defendants dispute that Chapel and Romanoff had qualified research expenses in the 1980s and assert that, during that period, Chapel was engaged primarily in Time and Materials based contracts. (Doc. 134 at 7, citing Doc. 126 (Rizwan Dep.) at 177:3-178:5.) They cite *Geosyntec v. United States* for the proposition that Time and Materials based contracts are routinely found to be not qualified under the Section 41 tax credit under the funding exclusion. *See Geosyntec Consultants, Inc. v. United States*, No. 12-80334-CIV, 2013 WL 5328479, at *2 (S.D. Fla. Apr. 17, 2013), aff'd, 776 F.3d 1330 (11th Cir. 2015). Additionally, Defendants assert that Chapel did not have a prefabrication division during the 1984-1988 period. A prefabrication division provides an offsite space for electrical engineers to test different wiring solutions. (Doc. 126 at 98:12-21.)

Defendants assert that, in contrast, QHI's contracts during 2009-2010 were predominantly fixed fee contracts—which they argue are generally not excludable under Section 41's funding exclusion. (Doc. 126 (Rizwan Dep.) at 177:3-178:5.) They further assert that QHI had a prefabrication unit in 2009-2010 and its subsidiaries were the designers of the prefabrication and modularization units integrated in the detailed electrical designs in several projects. (Doc. 134-1.) Defendants conclude with the assertion that there is no evidence that the 80s base period should apply or that qualified research activities occurred in the 1980s.

Defendants' arguments fail because they mischaracterize the burden of proof and fail to present admissible evidence creating a genuine issue as to whether QHI engaged in qualified research from 1984-1988. Defendants argue, at least implicitly, that the Government has the burden of proving that Defendants engaged in qualified research from 1984-1988 and therefore are not entitled to claim the tax credit. That view is incorrect. Under the tax regulations, Defendants are obligated to substantiate their right to the Section 41 tax credit. To do so, they

must come forward with evidence demonstrating that they are entitled to use the alternative "start-up" base period, instead of the 1984-1988 period. 26 C.F.R. § 1.6001-1(a) (taxpayer "shall keep such permanent books of account or records . . . as are sufficient to establish" the amount of a credit claimed); *id*. § 1.41-4(d) (taxpayer "must retain records in sufficiently usable form and detail to substantiate that the expenditures claimed are eligible for the credit.") The Government has the ultimate burden of proving its claim, which it may do by proving that Defendants have not substantiated their right to the claimed tax benefit. *INDOPCO*, 503 U.S. at 84.

Keeping in mind the relationship between Defendants' obligations as taxpayers and the Government's burden of proof, the Court turns to the parties' submissions. The Government has come forward with evidence that QHI, through Chapel, engaged in qualified research activities in the early 1980s of the same kind for which QHI claimed the tax credit in 2009 and 2010. In response, Defendants assert that QHI's subsidiaries were not engaged in those activities in the 1980s based solely on the deposition testimony of Rizwan Husain Virani, who testified as the corporate representative of Alliantgroup. Alliantgroup, as a reminder, is the tax services provider that conducted the "Research and Development Tax Credit Study" that led Defendants to claim the Section 41 tax credit. Mr. Virani does not have personal knowledge of QHI, much less the business conducted by QHI's subsidiaries in the 1980s. His testimony is inadmissible hearsay that cannot be used to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(2). The rest of the evidence cited by Defendants goes to whether or not QHI conducted qualifying research in 2009 and 2010. Thus, there is no admissible evidence from which a factfinder might infer—contrary to the Government's showing—that QHI did not engage in qualifying research activities in the 1980s, entitling it to use the "start-up" base period.

The Court grants summary judgment for the Government on its claim that Defendants were not entitled to take the Section 41 tax credit for tax years 2009 and 2010.

## IV.   MOTION TO EXCLUDE DR. BELIVEAU'S OPINION

Defendants moved to exclude the opinions of the Government's expert, Dr. Yvan Beliveau. (Doc. 83.)  The Government engaged Dr. Beliveau to provide an opinion on the nature of the electrical contracting work done by QHI in support of its claim for the Section 41 tax credit.  The issues raised regarding Dr. Beliveau's opinions are not relevant in light of the Court's ruling above, which does reach the nature of QHI's electrical contracting work.  The Motion to Exclude Dr. Beliveau's opinion is therefore denied as moot.

## V.   CONCLUSION

For the reasons above, the Court **GRANTS** the Government's Motion for Summary Judgment (Doc. 76), **DENIES** Defendants' Motion for Summary Judgment (Doc. 91), and **DENIES** Defendants' Motion to Exclude the Opinions and Testimony of Yvan J. Beliveau (Doc. 83).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, January 17, 2019.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE