**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cv-294 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| DENNIS F. QUEBE and LINDA G. QUEBE, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON THE ISSUE OF DEFENDANTS' CLAIM FOR TAX
DEDUCTIONS UNDER SECTION 179D OF THE INTERNAL REVENUE CODE
(DOC. 78); DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING § 179D DEDUCTION (DOC. 80); DENYING
PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF R. NICHOLSON
WORLEY (DOC. 130) AS MOOT; ORDERING PLAINTIFF TO SUBMIT A
PROPOSED FINAL JUDGMENT ENTRY WITHIN 21 DAYS; AND
TERMINATING CASE**

---

This case is before the Court on the Motion for Summary Judgment on the Issue of

Defendants' Claim for Tax Deductions under Section 179D of the Internal Revenue Code (Doc.

78) filed by Plaintiff United States of America (the "Government") and the Motion for Partial

Summary Judgment regarding § 179D Deduction (Doc. 80) filed by Defendants Dennis F. Quebe

and Linda G. Quebe ("Defendants").  The Motions are fully briefed (see Docs. 78-80, 128, 133,

140, 142) and ripe for review.  The Court deems oral argument on the Motions unnecessary.  For

the reasons below, the Court **GRANTS** the Government's Motion for Summary Judgment (Doc.

78) and **DENIES** Defendants' Motion for Summary Judgment (Doc. 80).  In addition, the Court

**DENIES** the Government's Motion to Exclude Testimony (Doc. 130) of Defendants' expert R.

Nicholson Worley as moot. Mr. Worley's testimony regards issues related to the Section 179D deduction that the Court did not reach in ruling on the parties' Motions.

## I.   BACKGROUND

### A.   Quebe Holdings, Inc.

Defendants Dennis and Linda Quebe own Quebe Holdings, Inc. ("QHI"), which operates as three separate electrical contracting companies: Chapel Electric ("Chapel"), Romanoff Electric ("Romanoff"), and CRT Technologies ("CRT"). These companies design and develop electrical systems for large commercial complexes. Their clients include entities such as Wright-Patterson Air Force Base, Dayton Public Schools, Miami Valley Hospital, and Lucas County, among others.

QHI was founded in 2002 and acquired Chapel and Romanoff in that year. Defendant Dennis Quebe founded CRT the following year. For purposes of the tax credit at issue, these companies are treated as a single taxpayer. 26 U.S.C. § 41(f). At all relevant times, Dennis Quebe was the sole shareholder of QHI. QHI is an S corporation; therefore, Mr. Quebe reported QHI's income on his personal tax return, which he filed jointly with his wife, Defendant Linda Quebe.

### B.   The Tax Credit Study

In September 2012, QHI retained a tax services provider named Alliantgroup, LP ("Alliantgroup") to perform a "Research and Development Tax Credit Study" for tax years 2008 to 2011. Alliantgroup agreed to be compensated to the extent that it determined QHI was eligible for the research credit, in an amount no greater than 25% of the tax credit ultimately identified.

Alliantgroup's study concluded, in part, that QHI was entitled to claim a tax deduction under 26 U.S.C. § 179D for energy efficient commercial building property for tax years 2009 and 2010. On April 1, 2013, QHI filed an amended Form 1120S and the Quebes filed an amended tax return (on Form 1040X) for tax year 2009. The Form 1040X reflected a reduction in the Quebes'

income tax liability for 2009 in the amount of $107,292.00. The Quebes also filed a Form 1040X

for tax year 2008, which reduced the Quebes' income tax liability in the amount of $87,054.00.

The reduction in income tax liability for 2008 resulted from the carryback from 2009 of a portion

of the claimed Section 41 tax credit. On August 26, 2013, the IRS issued to the Quebes a refund

in the amount of $119,954.65, which equaled the amount of the refund claimed by the Quebes on

their Form 1040X for 2009 plus statutory overpayment interest.

On December 30, 2013, QHI filed an amended Form 1120S and the Quebes filed a Form

1040X for tax year 2010. The Quebes' Form 1040X reflected a reduction in their income tax

liability for 2010 in the amount of $118,048.00. On April 7, 2014, the IRS issued to the Quebes a

refund in the amount of $129,482.90, which equaled the amount of the refund claimed by the

Quebes on their Form 1040X for 2010 plus statutory overpayment interest.

### C. Procedural Background

On August 25, 2015, the Government brought this action pursuant to 26 U.S.C. § 7405(b)

to recover allegedly erroneous refunds of federal taxes paid to Defendants. Specifically, the

Government seeks the return of the amounts refunded as a result of the amended tax returns

described above. On September 25, 2015, Defendants moved to dismiss the Complaint. On

October 15, 2015, the Government filed an Amended Complaint seeking the same relief but

containing additional allegations responsive to Defendants' Motion to Dismiss. Defendants filed

an Answer, which denied the Amended Complaint's material allegations.

The case proceeded to discovery before Magistrate Judge Sharon Ovington. The parties

agreed to narrow discovery to a sample of twelve of QHI's 2009 and 2010 projects for purposes

of evaluating the qualified research allegedly conducted in support of QHI's claimed tax credits.

The parties included the six largest projects by payroll and six projects randomly selected by the

Court.  After the resolution of a dispute concerning Defendants' responses to interrogatories, discovery closed on June 30, 2017.

On July 31, 2017, the parties brought Motions for Summary Judgment directed to specific claims for tax credits and deductions made by Defendants.  In a prior Order, the Court granted the Government's Motion for Summary Judgment on the Issue of Defendants' Claim for Tax Credits under Section 41 of the Internal Revenue Code (Doc. 76) and denied Defendants' Motion for Partial Summary Judgment – R&D Tax Credit (Doc. 91).  The Court also denied Defendants' related Motion to Exclude the Testimony of the Government's expert Yvan J. Beliveau (Doc. 83) as moot.

This Order resolves the parties' remaining Motions, specifically the Government's Motion for Summary Judgment on the Issue of Defendants' Claim for Tax Deductions under Section 179D of the Internal Revenue Code (Doc. 78) and related Motion to Exclude Testimony of R. Nicholson Worley (Doc. 130), and Defendants' Motion for Partial Summary Judgment regarding §179D Deduction (Doc. 80).

## II.     LEGAL STANDARD ON SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A *Wright & Miller, Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id*. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990). Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

In tax cases, like this one, the Government bears the ultimate burden of proving that a tax refund was erroneous, and to what extent. *See United States. v. MacPhail*, 149 F. App'x 449, 453 (6th Cir. 2005). The taxpayer, however, has the burden of showing its right to any claimed tax benefit. *See INDOPCO v. Commissioner*, 503 U.S. 79, 84 (1992). Taxpayers therefore must substantiate their entitlement to a claimed credit and are required to retain the records necessary to do so. 26 U.S.C. § 6001; 26 C.F.R. § 1.6001-1(a), (e). Specifically, a taxpayer claiming the increasing research tax credit "must retain records in sufficiently usable form and detail to substantiate that the expenditures claimed are eligible for the credit." 26 C.F.R. § 1.41-2(d).

## III.     ANALYSIS

Under 26 U.S.C. § 179D, a taxpayer can deduct the cost of energy efficient commercial building property "placed in service during the taxable year." "Energy efficient commercial building property" is property that, among other requirements, is installed as part of (1) the interior lighting system, (2) the HVAC system, or (3) the building envelope, and is certified as installed as part of a plan to reduce the total annual energy and power costs with respect to the interior lighting systems, heating, cooling, ventilation, and hot water systems of the building by fifty percent or more as compared to a reference building that meets the minimum requirements of Standard 90.1-

2001, a standard promulgated by the American Society of Heating, Refrigerating, and Air Conditioning Engineers and the Illuminating Engineering Society of North America (as in effect on April 2, 2003).  26 U.S.C. § 179D(c)(1).

If a property cannot meet the fifty-percent threshold, the owner may deduct the cost of energy-efficient property installed as part of one of those three systems if the system has reduced the total energy cost of the building by a certain percentage – for a lighting system, twenty percent (the "Partial Deduction").  26 U.S.C. § 179D(d)(1)(A); IRS Notice 2006-52 § 2.03(a) (Doc. 79-1); IRS Notice 2008-40 § 7.01 (Doc. 79-2).  A special alternative rule for interior lighting systems (the "Interim Deduction") allows the deduction if the lighting system reflects a sufficient reduction in lighting power density.  26 U.S.C. § 179D(f).

Government entities, which do not benefit from tax deductions, are allowed to allocate the § 179D deduction "to the person primarily responsible for designing the property in lieu of the owner of such property."  26 U.S.C. § 179D(d)(4).  That person must then meet the statutory and regulatory requirements that would apply to the owner of the property.  *Id.* ("Such person shall be treated as the taxpayer for purposes of this section.")

QHI claimed a deduction for 2009 and 2010 for installing energy efficient lighting in nine commercial buildings—five buildings on the Wright-Patterson Air Force Base ("WPAFB") and four new school buildings.  The Government contends that QHI was not entitled to take any deduction under Section 179D for those years.  With respect to WPAFB, the Government argues that QHI improperly claimed the deduction in 2009 for work performed in later years and, even if it were claimed in the proper year, the deduction was based on invalid inspections.  With respect to the schools, the Government argues that QHI was not entitled to the deduction because it was not primarily responsible for the design of the lighting systems; cannot claim an interim deduction

(a term or art under the statute) for a portion of the deduction; claimed the deduction based on invalid inspections; claimed the deduction for a building that had already been allocated to another contractor; and claimed the deduction for costs unrelated to the lighting system.

The Court considers only the Government's first argument as to both WPAFB and the schools because each of those arguments is meritorious.

### A. QHI's Partial Deduction for Five Buildings at WPAFB

QHI claimed a Partial Deduction in 2009 for its work installing light fixtures in five buildings on WPAFB. The Government argues that QHI cannot claim that deduction, however, because none of the light fixtures were "placed in service" in 2009. (Doc. 79 at 5, quoting 26 U.S.C. § 179D(a).) Defendants counter that they were entitled to rely on the placed-in-service date stated in the allocation letter they received from a WPAFB maintenance officer. They also argue that the buildings were placed in service as early as 2009, and that the placed-in-service date is the earliest date that a lighting system can perform its assigned function. Alternatively, if the Court were to find that the lighting systems were not placed in service in 2009, Defendants argue that they should be permitted to take the deductions in the correct year.

The language of the statute is plain: "There shall be allowed as a deduction an amount equal to the cost of energy efficient commercial building property ***placed in service*** during the taxable year." 26 U.S.C. § 179D(a) (emphasis added). The Government has marshaled substantial evidence showing that none of the lighting systems at WPAFB for which Defendants claimed the Section 179D deduction was placed in service in 2009.

QHI claimed the deduction for Buildings 20024C, 20016, 20198, 30060, and 30145 at WPAFB. (Doc. 79-9 at 1.) Three of these buildings – Buildings 20024C, 20198 and 30145 – were part of an Implementation Management Plan dated September 27, 2009. (Doc. 79-6 at 9-11.) QHI

was not contracted to work on Buildings 20016 and 30060 until a second contract was executed in 2011. (Doc. 79-8, Table A.) Thus, the lighting systems in Buildings 20016 and 30060 could not have been placed in service in 2009—unless QHI was working on them outside of a contract, which it does not allege.

That leaves three buildings that must be accounted for—Buildings 20024C, 20198 and 30145. For Building 20024C, the Government cites documentation showing QHI's work was not completed in 2009. In a "Request for Information" dated January 14, 2010, Chapel states that it "feels that a finish date of mid-March is unrealistic. Fixtures for 20024C are perhaps 6 weeks from time of order." (Doc. 79-10 at PAGEID# 5217.) As the Government rationally concludes: if the light fixtures had not been received as of January 2010, they could not have been placed in service in 2009.

Chapel's documentation similarly shows that it did not install any lighting in Buildings 20198 or 30145 in 2009. On December 29, 2009, Chapel informed Wright-Patterson that, after inspecting the lighting in Building 20198, the fixtures were "in very good condition" and "the building has received an upgrade within the last four years. Chapel feels the energy savings would not be worth the money spent on another upgrade." (Doc. 79-11 at PAGEID # 5219.) Chapel also proposed removing Building 30145 from the project because any lighting efficiency gains would be minimal. Chapel explained that the lighting was not likely to be used much outside the winter season (diminishing any gains) because Building 30145 was used to store snow removal equipment. (Doc. 79-12 at PAGEID # 5221.) WPAFB officials agreed and both Buildings 20198 and 30145 were dropped from the project. (Doc. 79-13 at PAGEID # 5230.)

The evidence shows that Chapel eventually performed work in Buildings 20198 and 30145 in 2012. (Doc. 79-15 at PAGEID # 5259.) It also shows that Chapel was scheduled to work on

Buildings 20016 and 30060 in 2012. (Doc. 79-8 at PAGEID # 5173; Doc. 79-14 at PAGEID # 5246; Doc. 79-15 at PAGEID # 5259.) That Chapel ultimately completed work in these buildings in 2012, however, does not substantiate its claim to the Section 179D deduction in 2009.

To rebut this showing, Defendants claim that they are entitled to rely on an allocation letter purportedly authorizing Chapel to claim the Section 179D deduction for the buildings. Based on its formatting, the allocation letter appears to have been prepared by a Chapel representative. It was signed in December 2012 by a Chapel representative and a WPAFB maintenance officer. The letter states, under penalty of perjury, that the in-service date for the buildings was April 2009.

The allocation letter does not create a genuine issue of material of fact regarding the placed-in-service date of the WPAFB buildings. To begin, the letter does not identify any of the five specific buildings at issue. Defendants claim that it covers all of the WPAFB buildings in Areas A, B, and C, which would include the relevant buildings. They essentially argue that the Court should construe all of the work completed at WPAFB as one project and accept the earliest placed-in-service date for any of that work as meeting Section 179D's requirements. They do not cite any authority for that proposition, however, which would result in an extremely broad reading of the statute's plain language. The statute permits the deduction only for "energy efficient commercial building property placed in service during the taxable year." 26 U.S.C. § 179D(a). If Congress intended to allow a deduction for energy efficient commercial building property during the taxable year that any portion of the project comprising such property is placed in service, it could have done so.

The allocation letter also fails to create a genuine issue because overwhelming evidence contradicts its assertion regarding the placed-in-service date. For example, as discussed, Chapel informed WPAFB on January 14, 2010, that it would take six weeks from when it orders the

fixtures for Building 20024C to complete the work. (Doc. 79-10 at PAGEID# 5217.) A blanket assertion made more than two years later regarding the placed-in-service date for this building, along with many others, does not create a genuine issue of material fact. Perhaps for this reason, Defendants do not appear to dispute the actual date when the lighting in the relevant buildings was installed. Rather, they rely on the broad reading of the statute discussed above, and for which they cite no authority.

The Government also argues that it does not matter whether the WPAFB official was mistaken about the date the property was placed in service, intended to allow Defendants to take the tax deduction in 2009, or simply did not read the document carefully before signing it. U.S. military personnel cannot authorize taxpayers to claim tax deductions that they would not otherwise receive. "The United States is not bound by unauthorized acts of its agents." *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 352 (6th Cir. 1986) (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). This is another reason why the allocation letter does not create a genuine issue of fact regarding the placed-in-service date for the WPAFB buildings.

Defendants lastly argue that, even if the placed-in-service date occurred in a different year, they should be allowed to move the deductions to the appropriate tax year under the Internal Revenue Code's "mitigation provisions." (Doc. 133 at 8, citing IRC §1311-1314, *J.B.N. Telephone Co. Inc. v. U.S.*, 638 F.2d 227 (10th Cir.1981).) The Court agrees with the Government, however, that Defendants' remedy is to file a new refund claim with the Internal Revenue Service rather than ask this Court either to issue an advisory opinion as to that entitlement or to empanel a jury to decide which years the property was placed in service. *Cf. McKinney*, T.C. Memo. 1983-440 ("An extensive analysis concerning whether this property qualifies for the investment tax

credit [in 1976] is not necessary, since the parties have stipulated that [the items] were placed in service in 1974."), aff'd, 755 F.2d 932 (6th Cir. 1985) (unpub.).

Here, the Government has not stipulated that Defendants are entitled to the Section 179D deduction in any alternative year. The Government's waiver of sovereign immunity for suits seeking tax refunds is conditioned on the taxpayer first filing a claim for the refund with the IRS. 26 U.S.C. § 7422(a); *see United States v. Dalm*, 494 U.S. 596, 601-02 (1990); *Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013) ("[N]o such suit may be brought 'until a claim for refund or credit has been duly filed . . . .'") (quoting 26 U.S.C. § 7422(a)). "[A] separate claim must be made for each return for each taxable period." 26 C.F.R. § 301.6402-2(d). Defendants have not filed an administrative claim for this refund for any other year, and thus there is no waiver of sovereign immunity for Defendants to pursue such a refund before this Court.

For the above reasons, the Government is entitled to summary judgment on its claim that Defendants are not entitled to the Section 179D deduction taken in 2009 for the WPAFB buildings.

**B. QHI's Partial Deduction for School Buildings – Primarily Responsible**

Defendants claimed the Interim Deduction under Section 179D for QHI's work on the lighting systems in portions of four school buildings: Eastmont PK-8, Meadowdale PK-8, Versailles K-12, and Raymer Elementary. (Doc. 79-9 at PAGEID # 5177.) The Government argues that Defendants are not entitled to any deduction for these buildings because QHI was not the person "primarily responsible" for the design of the lighting systems. In each case, the Government contends that the architect and engineer who designed the building was primarily responsible, not QHI.

Under Section 179D, a government entity may allocate the deduction "to the person primarily responsible for designing the property in lieu of the owner of such property." 26 U.S.C. § 179D(d)(4). IRS Notice 2008-40 § 3.01-03 explains this requirement:

> [T]he owner of the property may allocate the § 179D deduction to the person primarily responsible for designing the property (the designer). . . .
>
> .02 *Designer of Government-Owned Buildings.* A designer is a person that creates the technical specifications for installation of energy efficient commercial building property (or partially qualifying commercial building property for which a deduction is allowed under § 179D). A designer may include, for example, an architect, engineer, contractor, environmental consultant or energy services provider who creates the technical specifications for a new building or an addition to an existing building that incorporates energy efficient commercial building property . . . . A person that merely installs, repairs, or maintains the property is not a designer.
>
> .03 *Allocation of the Deduction.* If more than one designer is responsible for creating the technical specifications . . . the owner of the building shall – (1) determine which designer is primarily responsible and allocate the full deduction to that designer, or (2) at the owner's discretion, allocate the deduction among several designers.

Thus, while the Notice recognizes that energy efficient commercial building property may have more than one designer, it specifically excludes a contractor who "merely installs" the property from the definition of a "designer." The Government's position is that QHI did not collaborate with the architects and engineers who designed the buildings—it was not a designer, but merely installed the lighting pursuant to their specifications.

The Government cites the deposition testimony of Gregory Ross, Chief Operating Officer of QHI and President of Chapel. Ross testified that Chapel did not design the layout of the fixtures or determine the lighting parameters for a given space in the Meadowlark school. (Doc. 79-17 at 208:25-210:4; 210:15-22.) Ross testified that Chapel's role was to select fixtures that met the lighting parameters and requirements set for a space and then install those fixtures. (*Id*. at 212:13-

23.) The scope of QHI's work on the Versailles and Raymer projects was similar in scope. (*Id.* at 213:2-20.)  QHI's corporate representative testified that QHI's work on all four schools was the same and involved selecting fixtures that met the requirements of the plan they were given (which QHI did not create) and install those fixtures. (Doc. 79-18 at 55:4-17, 51:24-53:3, 56:2-57:1, 58:9-22.)

The Government also refers to the detailed lighting plans created by the architects of record for the four schools.  Fanning/Howey Associates, for example, provided plans specifying what types of fixtures should be installed, where, and how each fixture should be wired, along with a schedule of light fixtures that would meet the plan's parameters.  (Doc. 79-19.)  Moody-Nolan provided similarly detailed plans as the architect of record for the Eastmont school.  (Doc. 79-20 (identifying Fanning/Howey as the engineer of record).)  Allied Toledo Architects, Munger Munger & Associates Architects, and Vision Mechanical, along with Ray M. Miller, Professional Engineer, created the plans for the Raymer school.  (Doc. 79-21.)  Freytag & Associates Architects and Engineers, along with Jeffrey D. Zelinski, Professional Engineer, created the plans for the Versailles school.  (Doc. 79-22; *see also* Doc. 79-23 at ¶ 2.)

In response, Defendants argue that the Government's position would impose an "arbitrary rule" that only the person "primarily responsible" for the design may be allocated the deduction. This argument falls flat because the rule is not arbitrary—it is based on the statutory language drafted by Congress as elucidated by the agency tasked with administering it.  The Court also rejects Defendants' argument that IRS Notice 2008-40 expands the deduction beyond what was authorized by Congress.  It does not.  The Notice is entirely consistent with the statutory language stating that the deduction may be allocated to the persons "primarily responsible" for the design. Defendants contend that QHI was one of the designers of the lighting system, but they do not cite

any evidence showing that its role was any greater than that demonstrated by the Government's evidence. *See, e.g.,* Doc. 116 at 55:11-17 (Chapel corporate representative testifying that Chapel "selected the fixture that we felt would work best for the application and purchased accordingly.")

Defendants failed to create a genuine issue of material fact regarding their assertion that QHI was one of the persons primarily responsible for designing the schools. It was not. As a result, the Government is entitled to summary judgment on its claim that QHI improperly took the Section 179D deduction.

## IV.    MOTION TO EXCLUDE R. NICHOLSON WORLEY'S OPINION

The Government moves to exclude the testimony of R. Nicholson Worley, whom Defendants engaged to "provide an independent energy efficient commercial building analysis pursuant to Section 179D of the Internal Revenue Code" on the nine buildings for which QHI claimed deductions under Section 179D. (Doc. 130-2 at 1.) Mr. Worley's testimony concerns issues that were not pertinent to the Court's ruling on the parties' Motions for Summary Judgment. The Court therefore denies the Motion to Exclude (Doc. 130) Mr. Worley's testimony as moot.

## V.    PROPOSED FINAL JUDGMENT

The Court has now ruled on all of the parties' pending Motions for Summary Judgment and related motions. No claims remain pending. As the Government is the prevailing party on both of its claims, the Court orders the Government to submit a proposed final judgment for the Court's review within 21 days of this Entry and Order. The Government must submit the proposed final judgment for Defendants review, as to form and accuracy only, before its submission to the Court. Upon submission, the Government must indicate that it has permitted Defendants' counsel such review and state whether or not Defendants have any objection to its form or accuracy as submitted.

## VI.  CONCLUSION

For the reasons above, the Court **GRANTS** the Government's Motion for Summary Judgment (Doc. 78), **DENIES** Defendants' Motion for Summary Judgment (Doc. 80) and **DENIES** the Government's Motion to Exclude the Testimony of R. Nicholson Worley (Doc. 130). The Government is **ORDERED** to submit its proposed final judgment entry within 21 days of this Entry and Order.  This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, January 25, 2019.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE